No. 13,394.

Millington v. Hiedloff.
(45 P. [2d] 937)

Decided May 20 ,1935. Rehearing denied June 10, 1935.

Mr. W. T. MOYERS, Mr. W. A. ALEXANDER, Mr. CECIL M. DRAPER, for plaintiff in error.

Mr. PAGE M. BRERETON, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE plaintiff in error, Pauline Millington, was defendant below and the defendant in error, May Hiedloff, was plaintiff. In this opinion the parties will be so designated.

The defendant and Hattie Millington, her mother, at and prior to the time of the accident, out of which this action grows, resided together in the same house in Denver and constituted a family. The defendant was the owner of a Chevrolet sport roadster, which was used by both members of the family partly for pleasure and partly for business. In October, Mrs. Millington made a trip to Coaldale, near Salida, Colorado, to see her mother. The plaintiff— the sister of Mrs. Millington, and aunt of the defendant— accompanied Mrs. Millington and started the return trip with her. When they reached a point about a mile north of Sedalia on the Denver-Colorado Springs road, an accident occurred, in which both occupants of the car were in-

jured, Mrs. Hiedloff being the more seriously injured of the two. Mrs. Hiedloff as plaintiff brings this action for damages for personal injuries against her niece, Pauline Millington, the owner of the car, on the theory that the latter is liable under the family car doctrine. Trial was had to a jury, which found for plaintiff and judgment on the verdict was entered in her favor. Defendant brings the case to this court on writ of error.

The assignments of error raise three questions: (1) Whether under the evidence the car was a family purpose car; (2) whether the defendant could be held for her mother's negligence under the family car doctrine; (3) whether the evidence is sufficient under the Colorado guest statute to permit plaintiff to recover. The statute to which reference is made as the guest statute is chapter 118 of the Session Laws of 1931, and section 1, so far as here material, is as follows: ''No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others. * * *'' Since the cause must be reversed for insufficiency of evidence to show that plaintiff's injuries and damages were proximately caused by negligence of Mrs. Millington, the driver of the car, consisting of a willful and wanton disregard of the rights of plaintiff, it is unnecessary to determine, and we do not determine whether under the evidence the car was a family car, and if it was, whether defendant could be held for her mother's negligence in operating the car under the family car doctrine.

The evidence, stated in its most favorable light to uphold the verdict and judgment thereon, is substantially as follows: On the return trip Mrs. Millington and the plaintiff arrived at Colorado Springs in the late afternoon, where they encountered a snow storm. The plaintiff de-

scribed the snow as "wet and sleety" and the pavement as "pretty slippery." She further states that Mrs. Millington had driven all the time before that down the winding road from Coaldale with reasonable caution, but that after leaving Colorado Springs she was hurrying to get home and drove faster. They stopped at Palmer Lake for a cup of coffee and a sandwich, and to warm themselves. From there Mrs. Millington phoned her daughter, the defendant, informing her that they were at Palmer Lake on their way home, that it was storming very badly, and stated to her: "If we have a wreck you come and pick us up." Mrs. Hiedloff did not hear the defendant's reply, but the defendant on cross-examination stated that she told her mother if she could wait or if she felt nervous that she would drive down later and bring her home, but that her mother said she thought she could make it. Mrs. Millington had had several years' experience as a driver and had been on a number of long trips with the car. The tires on the car were in good condition and not worn. Since negligence is predicated on the excessive speed at which the car was driven, and the testimony of Mrs. Hiedloff is brief, it will be herein set out verbatim. "Q. Will you state whether you said anything to Mrs. Millington about her method or manner of driving? A. Yes, I asked her not to drive fast, because the pavement was so slick. Q. Was that statement of yours based on the speed at which she had previously driven between Colorado Springs and Palmer Lake? A. Yes, I thought she was driving too fast for the condition of the road. Q. State exactly what you said to her? A. I said, 'Hattie, you had better slow up, because the road is very slippery.' Q. Did she make any reply to that? A. No, I don't remember any reply. * * * Q. Could you see out? A. No, I could not. I couldn't see where I was sitting; I could see a light coming, but I couldn't see the road very good. Q. How about Mrs. Millington's side of the car, was that equally bad? A. No, she had a windshield wiper going. Q. The windshield wiper was going? A. Yes. * * *. Q. Did you observe

the speed that she was making after she left Palmer Lake?
A. I noticed the speedometer several times, it registered
45. Q. Did you say anything about that? A. Yes, I
called her attention to it. Q. Did you say anything more
than calling her attention to it? A. No—I told her that
she was driving too fast where the road was so slippery.
Q. Did you urge her to drive slower? A. I asked her to
drive slower, yes. Q. Did she make any reply? A. She
said yes, we would, she would slow up, and then would
start out again. Q. So that in reply to your request that
she drive slower she would slow up temporarily? A. Yes.
Q. And then she increased her speed again? A. Yes, she
would speed up again a little.'' A short distance out of
Sedalia Mrs. Millington passed a car. The plaintiff then
remarked that she was afraid and told Mrs. Millington
that she ought not to pass the car when the road was slip-
pery, and that the reply to this was, ''Don't be afraid.
* * * Q. You testified that the windshield was so cov-
ered you couldn't see anybody? A. No, I couldn't see, it
was so covered with snow. Q. Then what happened? A.
Well, after we passed the car, I imagine it was about a
mile, and she said, 'May, we are slipping, we are going,'
and that is all I remember.''

If from the foregoing evidence reasonable men
might draw the conclusion that the injuries and damage to
Mrs. Hiedloff were caused by the negligence of Mrs. Mil-
lington, and that such negligence consisted of a willful and
wanton disregard of plaintiff's rights, then the cause
should have been submitted to the jury and their conclu-
sion that it was negligence of such character would be
binding on this court. In our opinion the evidence as a mat-
ter of law is not sufficient to justify such a conclusion.

The court in its instruction No. 7 very clearly defines
simple negligence in these words: ''Negligence is a fail-
ure to observe, for the protection of one's self or of others,
that degree of care, precaution and vigilance which the
circumstances justly demand. In other words, it is the
want of that care and precaution which an ordinarily care-

ful and prudent person would exercise under all the circumstances of the case. A failure to do what an ordinarily careful and prudent person would have done under the circumstances of the case, or the doing of something that an ordinarily careful and prudent person would not have done under the circumstances of the case, is negligence.''

If the conduct of Mrs. Millington were to be measured by the rule of simple negligence, there was sufficient evidence to carry the case to the jury, but the guest statute, supra, requires more than simple negligence. The negligence required must consist of or amount to a willful and wanton disregard of plaintiff's rights. Negligence, in its generally accepted meaning, has in it no element of willfulness; but involves a state of mind which is negative; a state of mind in which the person fails to give attention to the character of his acts or omissions or to weigh their probable or possible consequences. As used in the guest statute the term ''negligence,'' coupled with the elements of willfulness and wantonness, must be construed, not in its commonly accepted sense, but as a standard to determine whether there has been culpable conduct. Stated with some elaboration the statute means that to constitute culpable conduct under the guest statute, entitling one to a recovery, there must be in the first instance acts or omissions such that if they were the result of mere inattention to their character and to a failure to weigh their probable consequences they would constitute negligence; but a showing of this character does not fully meet the requirements of the guest statute and authorize a recovery. This statute requires that willfulness and wantonness also shall be present; that acts and omissions constituting negligence if carelessly and inattentively done or omitted shall be willful and wanton. The guest, under the statute, must take the risk of the driver's simple negligence. She cannot recover on a showing of negligence alone. She does not carry the risk of willful and wanton acts or omissions that proximately cause her injury. Willful acts and omissions are conscious acts and omissions; acts and omissions, the

possible consequences of which are considered and weighed and present in the mind. To be also wanton acts and omissions they must be of such character or done in such manner or under such circumstances as to indicate that a person of ordinary intelligence actuated by a normal and natural concern for the welfare and safety of his fellow men who might be affected by them could not be guilty of them unless wholly indifferent to their probable injurious effect or consequences. It will thus be seen that not even every willful act or omission that it is known may subject the guest to possible injury, and that may be the proximate cause of injury to a guest, entitles the guest to a recovery. In addition to being willful, to entitle one to a recovery the conduct must be wanton, such that under the circumstances, indicates in and of itself to ordinarily intelligent and considerate persons a disregard for the safety of those liable to be affected thereby or an indifference to the injurious consequences that may result therefrom.

██ The foregoing evidence, being all the evidence on negligence, does not meet the requirements necssary to show willful and wanton disregard of Mrs. Hiedloff's rights. Mrs. Millington, having a grown daughter, evidently was a woman past middle age. She is not shown to have been of a malicious or indifferent disposition toward her sister or to have been heedless of her own safety. She drove carefully until the storm came on. She was in a hurry to get home. When her sister cautioned her to slow up she did so and then under the urge to reach her destination as soon as possible, and probably unconsciously, would again drive faster. That she drove too fast for safety is obvious in the light of what later occurred. That she intended to drive forty-five miles an hour may be admitted. That she knew this was an unsafe rate of speed under the circumstances does not appear from the evidence. The record does not show there was snow on the pavement, but that forty-five miles per hour on a wet pavement may be a negligent rate of speed under the con-

ditions also may be conceded. Even so, this does not carry the case beyond one of simple negligence. That Mrs. Millington said to her daughter over the phone to come and pick them up if they had a wreck is not disputed, but that reasonable men could construe this as a direct threat to wreck the car is inconceivable. At most it evidences but a recognition by Mrs. Millington that the storm had increased the hazards of the road. In all the foregoing we see nothing more than an error in judgment of Mrs. Millington, as to what the speed of the car might safely be, or at most, simple negligence. Any accident was as apt to injure the driver as to injure the guest. In fact, when it occurred, both were injured. In any reasonable construction of the evidence the element of intent to disregard the rights of plaintiff and incidentally her own safety does not appear; neither does it appear that Mrs. Millington was indifferent to how fast she traveled or to the consequences of excessive speed, either to the car, to herself or to her guest; nor can it reasonably be said that the speed of the car, under the circumstances, was such as to indicate in and of itself a reckless disregard and indifference to the consequences that might result to her sister and to herself. That Mrs. Millington would slow down when the speed was called to her attention and then later pick up speed negatives either a willful or wanton disregard of plaintiff's rights. If Mrs. Millington, the driver, was not guilty of conduct that would permit a recovery against her, then a recovery against her daughter, the defendant, obviously could not be predicated on the same conduct.

The judgment is reversed.

MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD not participating.