## No. 14,154.

BASHOR *v.* BASHOR ET AL.
(85 P. [2d] 732)

Decided April 25, 1938. On rehearing original opinion adhered to December 5, 1938.

Mr. LOWELL WHITE, Mr. HOWARD ROEPNACK, for plaintiff in error.

Messrs. RINN & CONNELL, for defendants in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The parties will be herein designated as they appeared in the trial court. Plaintiffs procured a judgment against defendant in the district court of Boulder county for damages occasioned by reason of the death of their son resulting from injuries sustained by the latter while a guest in the automobile which defendant was driving. Defendant prosecutes a writ of error.

Of the twenty assignments of error it is necessary, in the view we take of the case, to consider only the second, which is that the trial court erred in failing to grant defendant's motion to set aside the verdict and enter judgment for defendant.

The automobile guest statute of Colorado, chapter 118 of S. L. 1931, chapter 16, section 371, C. S. A. '35, sets forth the conditions under which a recovery may be had for injury to or death of a guest. So far as pertinent to this case it is as follows: "No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others."

It is not contended by plaintiffs that the accident was intentional on the part of the operator of the automobile or that it was caused by his intoxication. They do contend that the death resulted from the driver's "negligence consisting of a willful and wanton disregard of the rights of others." The principles controlling in such cases are set forth in *Millington v. Hiedloff*, 96 Colo. 581, 45 P. (2d) 937.

The evidence for plaintiffs, stated in its most favorable light to uphold the verdict, is to the following effect: Defendant was driving a Chevrolet sedan along an oiled

highway at a speed of 45 to 55 miles per hour at two o'clock in the morning with one passenger in the front seat and four others in the back seat, all friends of the defendant. None of the passengers was apprehensive of danger from the manner of defendant's driving, and none cautioned him in any way prior to the accident. The car contained a radio, the dial of which was attached to the post of the steering wheel. When attempting to locate a broadcasting station on the radio the defendant drove with his left hand on the wheel and dialed with his right hand. Counsel for plaintiffs contend that defendant was engaged in dialing the radio, turning it from station to station, and giving his attention to this constantly from the time he left the ranch, where deceased entered the car, until the time of the accident, which occurred a mile and three-quarters distant from the ranch. We shall assume that the evidence justifies such a conclusion. In any event defendant withdrew his attention from the road for so long a time that he approached to within fifty feet of a car ahead of him which was traveling at the rate of about thirty miles per hour before seeing it, his attention being directed again to the road by an exclamation of the passenger on the seat beside him. When he discovered this car it was so close that it was necessary for him to pull his own car so suddenly to the left to avoid a collision that after he had passed the car his own car began to weave from side to side; he was unable to regain control of it and it overturned, killing one passenger, and injuring defendant and the other occupants of the car in varying degrees of severity. There is no substantial conflict in the evidence.

It is clear that had defendant seen the car ahead in time he could have avoided the accident. It is equally clear that had he not negligently withdrawn his attention from the road to the dialing of his radio that he would have discovered the car ahead in time to have passed it in safety. There is no evidence in the record that he could or should have done anything to avoid the accident other than he did

do after he became aware of the situation which his negligence had created.

After the accident the defendant, who was a nephew of the plaintiffs and a cousin of the deceased, with his uncle—one of the plaintiffs—went to the office of the plaintiffs' attorney in Boulder and there signed a written statement, which, after deleting all reference to insurance carried by him, was offered in evidence by plaintiffs but excluded by the court when objection was made to its introduction. The offered statement, with the reference to insurance deleted, reads as follows: "To Whom it may concern:

"On April 21, 1935, at about 2 A. M., and while it was dark, I was driving the Chevrolet Sedan of Ronald Brodie, with his permission, in an easterly direction on the paved public highway about one and one-half miles east of Hygiene, in Boulder County, Colorado, and had as my guests in said automobile Waldo Bashor and three others in the rear seat of the car and a young lady companion in the front seat of the car, which car was equipped with a radio and the tires were all in good condition. I was then driving the car at about 45 miles or more per hour and the car's headlights were on and I could see a distance of over 150 feet along the highway. I was then engaged in turning the dial of the radio when I observed the young lady seated at my side make an exclamation of warning or fear, and I then observed for the first time that the car I was driving was very close, probably 50 feet in distance, from the rear of another car being then driven east on said highway, and I suddenly attempted to avoid a collision with said car and swung my car abruptly to the left in an effort to clear and to pass the same, and in so doing my car was driven over the north edge of the paved portion of the highway, then suddenly swung across said highway to the south edge thereof and back and across the highway again until the car overturned, and by reason of this occurrence Waldo Bashor met his death and certain of the occupants of the car, including myself, sus-

tained personal injuries. * * * I now frankly state that I feel I was responsible for the catastrophe in question and under the existing circumstances and that the same was caused by recklessness on my part and a disregard of the safety of others and that I was engaged in driving the car at the time with an indifference to consequences under said existing conditions and with which I was familiar and conscious * * *.

"In witness whereof, I have hereunto set my hand and seal at Boulder, Colorado, this 9th day of April, A. D. 1936."

While the foregoing statement was excluded by the court, on questions propounded by counsel for plaintiffs on cross examination of defendant we think all such portions of the statement contended by plaintiff to have been material, were admitted to have been made by him. For this reason, but without determining that the action of the court was or was not proper in excluding the statement, we have set it out in this opinion.

 We think the evidence clearly is sufficient to support a finding of negligence; but unless the foregoing written statement is evidence of "a willful and wanton disregard of the rights of others," there is no such evidence in the record. The driver was a close friend and relative of the deceased. He was on friendly terms with all the occupants of his car. No protest was made by anyone as to the speed or manner in which he was driving. There is no evidence that any one of the passengers felt any apprehension of danger. There is no evidence that defendant wilfully withdrew his attention from the road. He was engaged in locating a radio station broadcasting a program. His inattention to the road was incidental to that. None of the testimony reasonably will justify a conclusion that the finding of a satisfactory program was not his primary objective rather than a subterfuge to enable him to withdraw his attention from his driving and the road. He had been relating to the occupants of the car a story about someone stealing some lunch money

at school, and there is no evidence that this inattention to the road was a conscious inattention or that its possible or probable results were considered or present in his mind. All of the witnesses agree that when his attention was again directed to the road he immediately sought to avoid danger by going around the car ahead. Out of such a situation we are unable to spell willfulness either of act or omission. Mere unconscious inattention, under the circumstances disclosed here, and up to the moment of the warning by the passenger in the front seat—and nothing more is shown by the evidence—is not an omission of such character as to justify a finding that one could not be guilty of such inattention and at the same time have a natural and normal concern for the safety of others who might be harmed as a result of it. In other words, it is not wanton. We think the statement of defendant that he was responsible for the accident; that it was caused by his recklessness; that he was indifferent to consequences while engaged in driving the car; in the light of the undisputed testimony as to what he and other occupants of the car did and did not do, are but mere conclusions as to the legal effect of his conduct and therefore not properly to be taken into consideration as evidence by the court in connection with its ruling on defendant's motion to set aside the verdict and enter judgment for defendant. Its denial of this motion was error.

The judgment of the district court accordingly is reversed.

Mr. Justice Hilliard and Mr. Justice Bouck dissent.

Mr. Chief Justice Burke and Mr. Justice Holland not participating.

Mr. Justice Bouck, dissenting.

Until 1931 there was a widespread practice of suing for damages the negligent driver of an automobile in which an injury was suffered by a plaintiff who had been

merely a guest by way of gratuitous accommodation or favor. As a rule the real party in interest sought to be held liable was not the driver, but some automobile insurance company, and the frequency of such actions threatened a vast increase in the insurance premiums. The General Assembly curtailed the practice by enacting chapter 118 of S. L. '31 ('35 C. S. A., c. 16, §371), which provides: ''No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a willful and wanton disregard of the rights of others. * * *''

The words ''willful'' and ''wanton'' are common English words, having a fairly well defined range of meaning. They are in no sense technical terms. There is no occasion for an expert definition of them. In the absence of a legislative definition in the act itself, it is to be assumed that the General Assembly intended ordinary rules of interpretation to apply. That being true, the existence of wilfulness and wantonness in a particular case is a question for the jury to determine. This court has no right to defeat the expressed will of the legislature by whittling down the accepted meaning of terse, commonly used Saxon terms, easily understood. It is not for us to draw in advance an arbitrary line of demarcation according to the individual views of appellate judges, to be mechanically applied in relation to evidence concerning which we know nothing at first hand and have not the slightest fact-finding function. The trial judge, who hears the witnesses and observes their demeanor on the witness stand, may well be trusted to set aside a verdict, and to grant a new trial if necessary, when he as a conscientious presiding officer and as ''the thirteenth juror,'' deems it a wrong or unrighteous jury decision. Where there is evi-

dence, as there is here, tending to establish what jurors in the persons of average lay citizens would consider wilfulness and wantonness, appellate judges are bound by a jury verdict which has met with the deliberate approval of the trial judge. It is different, of course, when there are prejudicial errors on the legal side, as distinguished from the facts. In such event the appellate court has full power to undo that kind of miscarriage of justice. This is not the case here.

There was evidence in the case at bar to the effect that plaintiffs' son was killed because for a minute and a half before the accident the driver of the death car was continually using his right hand to turn on one broadcasting station after another on the car's radio and that at the same time he was speeding along a generally traveled and used, popular public highway at the rate of fifty-five miles per hour; and that this conduct resulted in the driver's coming up to within fifty feet of a car in front of him before he noticed it, which he did when a terrified passenger next to him made an outcry. When from any rational standpoint it was practically certain that an attempt to swerve the car would turn the tremendous momentum of eighty-one feet per second into an inevitable instrument of death, as would have been the case if he had gone on and collided with the car in front of him, I respectfully submit that if twelve jurors united in believing the above-mentioned evidence we ought to accept their finding of wilfulness and wantonness, provided the trial court has refused to set the verdict aside. This court's duty, it seems to me, is then to let the verdict stand.

It is to be noted that there was also before the court evidence of statements made by the defendant himself in which he expressly admitted that the accident had been due to his recklessness and disregard of the safety of his passengers. Moreover, the excluded written and signed statement of the defendant, quoted from by Mr. Justice Young, would have amply fortified the jury verdict. I submit that its rejection was error. The declaration that

the statement was properly excluded because it contained legal conclusions is, I believe, not sound. While allegations of pleadings are controlled by the principle that mere legal conclusions must be either eliminated or disregarded, I know of no such principle or rule that could practically be applied to statements made by parties, whether in writing or by word of mouth.

The majority opinion cites *Millington v. Hiedloff,* 96 Colo. 581, 45 P. (2d) 937, to justify its present decision. Under the particular facts in that case the denial of a right of action was correct. Those facts did not require more than giving the ordinary meaning to the language of the 1931 Act. The extended discussion by Mr. Justice Young in the Millington case, while interesting and helpful, is of course dictum. In this class of cases it would be futile to attempt setting once for all the exact limits by which each situation shall be automatically classified either as presenting or as not presenting a good cause of action, just as it would be futile to attempt, for example, an exhaustive or even approximate definition of fraud. After all, it is in each instance a question of fact, and as already stated the language of the statute obviously requires neither construction nor special interpretation. If peculiar facts should ever require one or the other of these, it would be time enough to let the trial court first work out the problem, subject to a proper review by this court, without our seeming to prejudge cases by a general psychological analysis or the application of a supposed all-embracing theory.

The danger and evil of substituting an appellate court for the trial court, which is the only lawful fact-finding body in cases of this kind, are nowhere better exemplified than in the case at bar and in the case of *Pupke v. Pupke,* 102 Colo. 337, 79 P. (2d) 290.

Believing, as I do, that the verdict of the jury should have been sustained and the judgment of the district court affirmed, I respectfully dissent.

Mr. Justice Hilliard concurs in this opinion.