No. 14,221.

PUPKE *v.* PUPKE.
(79 P. [2d] 290)

Decided May 9, 1938.

Messrs. BARTELS, BLOOD & BANCROFT; Mr. ARTHUR H. LAWS, for plaintiff in error.

Mr. IVOR O. WINGREN, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

WRIT of error to review a judgment entered on a jury verdict of $2,550 recovered by defendant in error in a case involving the automobile guest statute ('35 C. S. A., volume 2, chapter 16, section 371, S. L. 1931, p. 460, §1).

Defendant in error is mother of plaintiff in error, and reference will be made to them herein as mother and daughter. The only question in the case is whether the daughter's conduct, in its relation to the operation of the automobile owned by her father, consisted of such "a willful and wanton disregard of the rights of others" as to be actionable under the statute.

The accident, which was the basis of this action, occurred on Sunday, July 1, 1934, when the mother, father, daughter and two girl friends were on an automobile pleasure trip. They had been to Canon City and were returning to Denver via the Canon City-Colorado Springs highway. The daughter, twenty-three years of age, was driving. She had driven cars for eight years. A few miles east of Canon City they came to what is known as the Phantom Canon road to Cripple Creek (state highway 67), and the daughter, failing to notice the road sign, turned to the left and took that road, which, it developed, was in bad condition. The father and mother told her it was the wrong road, but she kept on going until they came to a way-side stand where they bought some refreshments and inquired about the road they were traveling. When informed that it went to Victor, and that its condition would get worse as they proceeded, the father and mother insisted on returning the way they had come. The daughter, although she did not wish to do so, finally agreed. She had been wearing her glasses, but before starting on the return trip, she put them in the glove compartment in the front of the car. She apparently was peeved about not going on to Victor, because she thought and said it was a beautiful and interesting drive. However, nothing in particular occurred when they started back. There had been some rock slides along the road, and in trying to go around one of these, she got too close to the edge, the dirt gave way and the car rolled over into the canon, injuring all of the occupants, particularly the mother, who sustained permanent injuries. There is no contention that there was any negligence or wanton and

willful disregard of the rights of others in the actual operation of the automobile at the time of the accident, aside from the daughter's failure to wear her glasses, and her alleged "peevish" mood. She had slackened the speed to twelve miles an hour and was proceeding cautiously when the car went off the road. Her father and mother were seated in the rear seat, the two girl companions being in the driver's seat. No complaint was made of her driving while they were going back. It seems she took off her glasses to rest her eyes, but on the witness stand she told the jury she removed them because she was angry, and "I had been nagged at quite a bit that day, and I was in a sort of a pig-headed mood, I think."

In a demonstration before the jury at the trial, the daughter was asked to identify certain writings on a blackboard in the court room from various distances, and in order to do so she had to stand as close as three feet. However, a qualified oculist explained that there was a distinction between direct vision (macular perception) just demonstrated, and a person's ability to distinguish the side of the road (peripheral perception). This oculist stated that "if she were sitting in the driver's seat with fair circumstances of vision [6:45 p. m. clear], that she would be able to see the road on both sides of the road for quite a considerable distance."

Our only purpose in detailing this evidence is to demonstrate that the daughter's visual deficiency was not such that, in driving the car without her glasses, she would be guilty of willful and wanton negligence. It would seem rather that the whole matter concerning her vision was an afterthought, because if glasses had been absolutely necessary to her while driving, her father and mother would surely have noticed their absence and objected to her driving without them. Nowhere in the record does it appear, nor is it urged or contended, that a driver with perfect vision and otherwise physically normal, would have driven any differently than did the daughter at the time of the accident.

It being apparent that there was no negligence in the operation of the automobile present on the occasion in question, the matter of the driver's mental attitude becomes material. There is no showing of any ill will or malice toward any of the occupants of the car. The daughter's love and affection for her father and mother is admitted, and the two girls had been her friends for years. Her own words before the jury (not used when she made her statement just after the accident) were that she was in a "pig-headed mood" and "peeved." These expressions, in themselves, import only a negative state of mind, and it is easy to understand how, on a day in midsummer, after having driven almost continuously from 8:00 o'clock in the morning, she would be warm and irritable, without any other provocation. She was the only one of the party who was in favor of going on up to Victor. Her mother made no claim of a reckless mental attitude, and the daughter's statement, "No, I do not think I did care especially what happened" is refuted by the care with which she was driving that afternoon.

■ Counsel for the mother cites no case tending to support the judgment here, and joins with counsel for the daughter in the statement that the case of *Millington v. Hiedloff*, 96 Colo. 581, 586, 45 P. (2d) 937, is controlling. The rule therein laid down is as follows: "The guest, under the statute, must take the risk of the driver's simple negligence. She cannot recover on a showing of negligence alone. She does not carry the risk of willful and wanton acts or omissions that proximately cause her injury. Willful acts and omissions are conscious acts and omissions; acts and omissions, the possible consequences of which are considered and weighed and present in the mind. To be also wanton acts and omissions they must be of such character or done in such manner or under such circumstances as to indicate that a person of ordinary intelligence actuated by a normal and natural concern for the welfare and safety of his fellow men who might be affected by them could not be guilty of them un-

less wholly indifferent to their probable injurious effect or consequences. It will thus be seen that not even every willful act or omission that it is known may subject the guest to possible injury, and that may be the proximate cause of injury to a guest, entitles the guest to a recovery. In addition to being willful, to entitle one to a recovery the conduct must be wanton, such that under the circumstances indicates in and of itself to ordinarily intelligent and considerate persons a disregard for the safety of those liable to be affected thereby or an indifference to the injurious consequences that may result therefrom.''

We are clearly of the opinion that the facts disclosed in the instant case do not satisfy the requirements of the rule. At best they show simple negligence as to which, as above recited, the guest assumed the risk.

Judgment reversed.

Mr. Justice Bouck dissents.