No. 17,162.

PETTINGELL *v.* MOEDE.

(271 P. [2d] 1038)

Decided June 14, 1954.   Rehearing denied July 6, 1954.

Messrs. JANUARY & YEGGE, Mr. RICHARD D. HALL, for plaintiff in error.

Mr. GRANT E. McGEE, Mr. GLENN F. MENHENNETT, for defendant in error.

*En Banc.*

Mr. Justice Clark delivered the opinion of the Court.

Carol Moede, plaintiff in the trial court, recovered judgment against defendant in a substantial sum following a verdict of the jury in her favor. Her action is for damages for personal injuries incurred by being thrown from a motor vehicle operated by defendant, due, as she alleges in her complaint, to a willful and wanton disregard on the part of defendant of the rights of others including the plaintiff. It admittedly is such an action as comes within the scope of section 371, chapter 16, '35 C.S.A., commonly referred to as the guest statute.

The defendant in presenting the case here pursuant to writ of error, among others, relies for reversal on two grounds: (1) That the trial court should have directed a verdict in defendant's favor for the reason that plaintiff failed to prove "negligence consisting of a willful and wanton disregard of the rights of others;" and (2) that instruction No. 11 given to the jury by the trial court was erroneous and improper. We shall discuss these points together as, under the circumstances here presented, they are related, and a determination of the first requires consideration of the second.

The facts of the case are not involved and in the main are undisputed, there being conflict with respect only to two or three rather minor and somewhat incidental details.

In the summer of 1951 plaintiff and defendant first became acquainted while both were employes at the Holzworth ranch, located some few miles out of the Town of Grand Lake on the Trail Ridge Road leading toward Denver. Following the summer season, plaintiff returned to her home in Illinois and defendant entered Colorado State A. & M. College at Fort Collins, Colorado. Some few weeks thereafter plaintiff, while on her way to visit relatives residing at Laramie, Wyoming, stopped at Fort Collins and visited defendant, at which time it was arranged that during the coming Colorado deer

---

season defendant would come by Laramie, pick up plaintiff and take her to Grand Lake for a visit there while he hunted deer. Accordingly, on Friday, October 19, 1951, defendant called for plaintiff at Laramie, whence they drove westerly in Wyoming; then southerly through Walden, Colorado; over Willow Creek Pass to Granby; and on to Grand Lake. They encountered some light snowfall on Willow Creek Pass, aside from which the road was dry. During the following Saturday and Sunday a light snow continued to fall and the roads and highways became snow-coated, icy and slippery. At about noon on Sunday it was suggested that, because of the condition of the highways, these young people should get on their way home early in the day, but defendant replied that he expected to continue hunting because he had not gotten his deer. He hunted that afternoon, killed a deer, had supper at the Holzworth Ranch and he and plaintiff started their homeward journey about 8:00 o'clock that evening.

Defendant was driving a 1947 four-wheel drive Willys jeep equipped with what is known as bar-tread snow and mud tires on the rear wheels, and new knobby tires on the front wheels. From the Holzworth ranch they drove down through the Town of Grand Lake and on to Granby where that highway intersects U. S. Highway 40. At Granby, defendant pulled his jeep up behind a line of cars at a filling station for the purpose of obtaining gasoline, where the station attendant suggested to him that he should put on his chains. Further along the road they came up behind the line of cars on a hill on highway 40, and upon defendant stopping to ascertain the trouble, learned that the drivers of those cars were putting on their tire chains. He still believed that his jeep would need no chains and proceeded without them. He continued on easterly over Berthoud Pass, upon reaching the top of which, defendant remarked something about having made it without chains. Defendant testified that he came up the westerly side of Berthoud Pass

in second gear at a speed of about thirty miles per hour. On reaching the top of the pass he shifted into high gear and began the descent on the easterly side at a speed of thirty-five miles per hour. He had negotiated two hair-pin curves without difficulty and then approached a slight curve to the left, but because of the continuing downgrade he felt that he was driving slightly too fast and, in an attempt to slow his speed, stepped on the brake. Immediately he lost control of the jeep which slid in a direct line over a high bank and fell some distance into the rocks and rough coverage of the grade. There was no guard rail at this point and no bank of snow or other obstruction to prevent the car from sliding over the side of the roadway.

At the time of this unfortunate event, plaintiff was twenty years of age, and defendant eighteen. They were on very friendly relations, and during the course of this trip, including the drive that ended so disasterously, they had had no misunderstanding or disagreement of any kind. Apparently they were enjoying the ride together and their conversation was mainly concerning ordinary affairs and light topics of interest. Plaintiff testified that during the trip from Laramie to Grand Lake there could be no criticism of defendant's driving; that from the ranch to Granby on the return trip defendant drove very well; and that in coming over Berthoud Pass that evening, she had no cause for apprehension whatsoever except that she felt that defendant was driving somewhat too fast, but admits that she said nothing to him about it. The mishap occurred suddenly and without previous warning. That plaintiff was seriously injured there is no doubt, nor is the extent of her injuries questioned.

Testimony of the defendant, which was uncontradicted, is to the effect that prior to 1951 he was a resident of Pennsylvania; that he began to learn to drive a car in 1949; procured his first driver's license in 1950; and that previous to this trip he had had practically no

experience in driving upon snow-coated and icy roads, particularly in a mountain area.

On behalf of plaintiff it is contended, based upon testimony in the record, that at the ranch, the folks there insisted upon these young people starting home early in the day; that defendant was urged to put on chains, and plaintiff testified that the reason she said nothing to defendant about fast driving was because, on a former occasion during the summer, when she had remonstrated with him on the topic of speed, he had become stubborn and refused to reduce his speed; that he was "bullheaded." Defendant admits that there were suggestions at the ranch that they leave early, but denies anyone insisted upon them doing so. He had gone there for the purpose of killing a deer and he did not wish to leave without one. He also admits that the filling-station man at Granby suggested he put on chains, but with the tires with which his car was equipped, he felt that he did not need them. He denies that plaintiff had ever remonstrated with him for driving too fast during the preceding summer or at any time, or had in any way criticized his driving. These incidental items are the only points where there is even the slightest conflict in the evidence.

■ ■ Are the foregoing facts, viewed in the light most favorable to the plaintiff, sufficient to support a verdict in her favor under the guest statute? Where the testimony is not in conflict and essential facts uncontroverted, it becomes first the duty of the court to consider whether the evidence is sufficient, as a matter of law, to support a verdict before submitting the case to a jury. If it appears clear that the law is such that the evidence presented is insufficient, it is the duty of the court to direct a verdict; if, on the other hand, the evidence is such that reasonable minds might draw different conclusions therefrom, it is proper that a jury decide the issue. Having the facts before us, let us now examine the law.

The portion of the statute here applicable reads as

follows: "No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication, or by negligence consisting of a wilful and wanton disregard of the rights of others. * * *" S.L. '31, p. 460, c. 118, §1.

It immediately is apparent that by the statute three instances are specified where the driver of a vehicle may be liable to his guest: (1) Intentional accident; (2) accident caused by the driver's intoxication; and (3) "by *negligence* consisting of a wilful and wanton disregard of the rights of others." (Emphasis supplied.) The language of the statute is unfortunate in at least two particulars, the first of which is *intentional accident*. It immediately is clear that where one intentionally wrecks a motor vehicle, that is no accident. With this, however, we are not here concerned, nor with the question of intoxication, as there is no claim or contention in this case that defendant had been drinking to any extent whatsoever. Our problem here deals entirely with the third provision of the statute, "by negligence consisting of a wilful and wanton disregard of the rights of others." This question has been before our Court many times. Notwithstanding that we said in *Foster v. Redding*, 97 Colo. 4, 7, 45 P. (2d) 940, that this phrase presents no serious problem, that it seems self-evident, and that "attempts at further definition involve the risk of explaining 'what seems most clear so clearly that it seems perplexed,'" judging from the differences in presentation of several guest-statute cases rather currently before us, we are convinced that a degree of confusion and uncertainty still remains concerning this particular phrase of the statute. It is difficult, and may prove impossible, to further clarify this phraseology, but we shall undertake

here to do so, even at the risk of causing additional confusion.

■ ■ Negligence consists of failure to exercise for the protection of others that degree of care and caution that would, under the prevailing circumstances, be exercised by an ordinarily prudent person. It consists in doing something, which, under the circumstances, should not have been done, or in omitting to do that which should have been done. Negligence, as so defined, is generally considered, and frequently denominated, simple negligence. Under the guest statute it is insufficient to support a judgment against the driver of the vehicle.

■ Under the guest statute, the facts must show more than negligence. To willfully and wantonly disregard the rights of others requires a consciousness of heedless and reckless conduct by which the safety' of others is endangered. For the purpose of properly construing this statute, ordinary or simple negligence should be considered as resulting from a passive mind, while a willful and wanton disregard expresses the thought that the action of which complaint is made was the result of an active and purposeful intent. Willful action means voluntary; by choice; intentional; purposeful. Wantonness signifies an even higher degree of culpability in that it is wholly disregardful of the rights, feelings and safety of others. It may, at times, even imply an element of evil. One may be said to be guilty of "wilful and wanton disregard" when he is conscious of his misconduct, and although having no intent to injure anyone, from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in injury to his guest, and is unconcerned over the possibility of such result. The word wanton is defined in Webster's New International Dictionary (2d ed.), as: "Marked by or manifesting arrogant recklessness of justice, of the rights or feelings of others, or the like; * * *." Synonyms given for it are capricious, wayward, spiteful. To

be "willful and wanton" there must be some affirmative act purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the guest. "To be so classified, conduct must negative both attention and concern; it must demonstrate indifference as well as inattention to consequences which may result." *Fanstiel v. Wright,* 122 Colo. 451, 454, 222 P. (2d) 1001.

The demarcation between ordinary negligence, and willful and wanton disregard, is that in the latter the actor was fully aware of the danger and should have realized its probable consequences, yet deliberately avoided all precaution to prevent disaster. A failure to act in prevention of accident is but simple negligence; a mentally active restraint from such action is willful. Omitting to weigh consequences is simple negligence; refusing to weigh them is willful. Performance of a dangerous act willfully, under certain circumstances, as in an emergency, is permissible, and will not subject the actor to liability even under the guest statute; hence, it is provided that to be actionable under that statute the conduct of the driver of the vehicle must be both willful and wanton, because a wanton act is never excusable.

The foregoing comments are in complete conformity with a number of cases heretofore decided by our Court, particularly *Millington v. Hiedloff,* 96 Colo. 581, 586-87, 45 P. (2d) 937, wherein the terms willful and wanton are defined and which has been quoted with approval and followed in a number of cases since that time. Among others, see, *Pupke v. Pupke,* 102 Colo. 337, 79 P. (2d) 290; *Bashor v. Bashor,* 103 Colo. 232, 85 P. (2d) 732; *Helgoth v. Foxhoven,* 125 Colo. 446, 449, 244 P. (2d) 886.

■ ■ It would seem to be the common practice of trial courts in cases involving the guest statute to first instruct the jury defining simple or ordinary, negligence,

and then to direct that such negligence is not sufficient to sustain a verdict favorable to the plaintiff under that statute. That being the case, the question arises in the mind of the author of this opinion as to any good reason why the jury should be instructed relative to simple negligence at all. What necessity prompts the doing of this futile thing? Why burden the minds of the jurors with an instruction defining negligence and then tell them that such is so insufficient as to have no place in the case? Why is it not preferable in such a case to simply instruct the jury that before they can find a verdict in favor of the guest plaintiff, they must find the conduct of defendant to have been in willful and wanton disregard of the rights of others, and then proceed to define the meaning of that phrase? If, however, trial courts persist in defining simple negligence in such cases, then extreme care and caution must be exercised to make it plain and certain to the jury that negligence alone is not sufficient under this statute. We are convinced that in a number of recent cases coming to our Court, confusion on the part of the jury has arisen through its difficulty in distinguishing the difference between negligence and willful and wanton misconduct. In a number of instances the instructions have not been sufficiently clear and plain, and such is true in the instant case.

Over the objection of defendant, the trial court gave instruction No. 11, which, quoted in full, reads as follows: "In determining whether the defendant, Richard Joel Pettingell, is liable, you may take into consideration whether, though he had no intent to injure, he was *conscious of his conduct,* and from a knowledge of surrounding circumstances and existing conditions, knew, *or should have known,* that to continue his course of conduct would naturally and probably result in injury; and you may further take into consideration whether his conduct was such that under the circumstances it indicated to an ordinarily intelligent person an indifference

to the injurious consequences that may result." (Emphasis supplied.) The specific point raised here goes only to the words "or should have known." The instruction is objectionable in other respects as we shall hereinafter illucidate. Confining ourselves for the moment to the phrase "or should have known," it is contended on behalf of plaintiff that this phraseology appears in, and has been approved by, our Court in many decisions, beginning with the case of *Clark v. Small*, 80 Colo. 227, 250 Pac. 385, and continuing through to the rather recent case of *Clark v. Hicks*, 127 Colo. 25, 252 P. (2d) 1067. So far as the assertion that this or a similar expression is contained in many of the decisions indicated, counsel are correct; but it does not follow that court instructions similar in form to No. 11 in the present case have been approved thereby. In some of the rather recent cases these words are to be found in some instruction given in the case, but in every instance they are surrounded by other and further definitions and directions which take from them the bold, hard effect they have in the instruction here under consideration. For instance, counsel assert that the identical phraseology contained in instruction No. 11 is to be found in an instruction given as No. 13 in *Clark v. Hicks, supra*. In this statement they are only partially accurate. While the identical language is found in instruction No. 13 in the Hicks case, supra, yet it is but a part of that instruction. In that instruction the jury were first told, and it was made plain and specific, that before it could find a verdict for the plaintiff, it must find one of three certain requirements of the guest statute, setting them forth in full. The instruction as then given was not specifically approved by our Court, but was said not to constitute error "when read in connection with other instructions given the jury."

As a matter of fact, the phraseology under discussion probably has been somewhat unfortunately expressed in our former opinions. In view of the previous discussion

herein of the meaning of "wilful and wanton disregard," wherein we have tried to make plain that this represents a condition of the mind and requires an active rather than a passive mental attitude, it is impossible to say accurately that one "should have known." We thereby infer that he did not know, whereas the meaning of the terms willful and wanton expresses the thought that he did know. Without doubt the thought that was intended to be conveyed in the former opinions to which reference has been made, relates to the principle that, where, from the surrounding facts and circumstances, the jury may rightfully determine that a reasonably prudent person should have known the probable result of his reckless conduct, the jury may find by inference that the defendant did know, regardless of the fact that he himself maintains that he did not know. It is the same principle by which the jury is enabled in various instances to determine from all surrounding facts and circumstances the thought that was in the mind of a defendant at a particular time. It is the method by which *intent* is determined.

The instruction is incomplete and confusing in other respects. We mentioned above, that it was taken from, but is only a part of, a similar instruction given in the case of *Clark v. Hicks, supra*. It probably is thought by counsel that other instructions given supply the omissions, but an examination of all the instructions demonstrates that this is not the case. It is simply stated in this instruction that if defendant "was conscious of his conduct" and knew or should have known that to continue therein would naturally and probably result in injury, he may be held liable. Such language is perfectly consistent with simple negligence. Unless he be unconscious, any driver of an automobile is conscious of his conduct. No other instruction given supplies the element this one lacks. For instance, it is set out in No. 9 that it is essential for plaintiff to prove by a preponderance of the evidence that defendant "was guilty of

negligence as alleged and as defined in these instructions," and that her injuries were proximately caused by such "negligence." The only definition of negligence given, is that of simple negligence contained in instruction No. 5, and it is without the addition of any cautionary direction to the effect that such is not sufficient under the guest statute. No other definition of "negligence" appears in the instructions at any place. True, it appears in No. 9 that "ordinary negligence is not sufficient," but it nowhere informs the jury that ordinary negligence is the type of negligence defined in instruction No. 5. The court then proceeded in the same instruction to state that, under the guest statute, to be actionable, negligence must consist of wanton and willful disregard of the rights of others, explaining and defining the meaning of those words in instruction No. 10. It is clear that the jury was left to struggle with the problem of whether plaintiff was required to prove only that the defendant was "conscious of his conduct" and guilty of simple negligence, or of some higher degree which is not clearly defined. A jury is to regard all court instructions and consider them together, and it was so advised in the instant case; but even a correct instruction cannot cure an erroneous one. Where it is impossible to determine which line of reasoning a jury adopted, it likewise is improper to speculate that it selected the correct theory and disregarded a wrong one.

■ Regardless of this circumstance, however, we still have left the question of whether it was not the duty of the court to have granted defendant's motions for a directed verdict in his favor. Do the facts, considered in the light most favorable to plaintiff, show that she has sustained the burden of proof on the issues which, under this statute, she was obliged to prove? Wherein is there any evidence that defendant acted in willful and wanton disregard of the rights of plaintiff? Was it that he did not leave the ranch for the return trip immediately after lunch? If so, everyone who drives

an auto over mountain passes after nightfall when the roads are slippery is equally guilty of misconduct. Was it because he did not put on tire chains? If so, many experienced mountain drivers would insist that chains are valueless except for a pull and that their omission is not negligence; besides, in the present case, plaintiff's jeep was equipped with new "winter tires." Was it because he proceeded downgrade at too great a speed, considering the condition of the highway? Was it because he stepped on his brake? Considering for the moment that either or both of these latter mentioned acts constitute negligence, where is the evidence that they were committed in "willful and wanton disregard" of the life, safety, or even the composure of plaintiff, or in a spirit of reckless indifference to probable consequences? This eighteen-year-old youth apparently was quite proud of his jeep. He had his own safety to consider, as well as that of the friend by his side. He had had no prior experience in driving ice-coated mountain roads. He doubtless now knows, after this terrifying experience, that under such conditions speed must be reduced to a minimum, and that, in this instance it was a mistake to set his brake, but it is evident that he did not know these things at that time. Without realization of the danger, it is unrealistic to say that he was intentionally heedlessly reckless, guilty of willful and wanton misconduct, and disregardful of the safety or rights of his guest, or others. *Ricciuti v. Robinson* (Utah), 269 P. (2d) 282 (cited only because recent). Colorado cases, supra, to same effect.

"That she drove too fast for safety is obvious in the light of what later occurred. That she intended to drive forty-five miles an hour may be admitted. That she knew this was an unsafe rate of speed under the circumstances does not appear from the evidence." *Millington v. Hiedloff, supra,* 587.

"Here we have almost nothing more than simple negligence, and the fact that defendant may have been driv-

ing his car at a negligent rate of speed, under the conditions, does not carry the plaintiff's case beyond one of simple negligence." *Loeffler v. Crandall,* 129 Colo. 384, 270 P. (2d) 769 (No. 17,142, announced May 10, 1954).

In the present case difficulty would be encountered in sustaining a judgment for simple negligence; hence the evidence is far short of that standard of proof necessary under the guest statute.

The judgment is reversed and the cause remanded with instructions to the trial court to dismiss the action.

MR. JUSTICE MOORE dissents.

MR. JUSTICE MOORE dissenting.

I must dissent from the views expressed in a substantial portion of the opinion of the Court. My dissent is directed to that part of the opinion which holds that, as a matter of law, there was insufficient evidence to warrant submission of the question of liability to the jury. I am in agreement with that portion of the opinion which deals with the instructions given in this case, and according to my views the judgment should be reversed and the cause remanded for a new trial.

### On Petition for Rehearing.

On this 1st day of July, 1954, on petition for rehearing, petition for rehearing is stricken because of nonconformity with Rule 118 (c) of the Rules of Civil Procedure (Colo.), as amended and adopted November 19, 1951, and February 12, 1953.