105 So.2d 881 (1958)
KLEM'S, INC., a Florida Corporation, and Stanley Moore, Appellants,
v.
Patricia CLINE, Appellee.
Supreme Court of Florida.
October 17, 1958.
Rehearing Denied November 14, 1958.
*882 J.B. Patterson, Ronald B. Sladon, and Richard T. Shankweiler, Fort Lauderdale, for Klem's, Inc., a Florida Corporation and Fleming, O'Bryan & Fleming and Theodore R. Hainline, Fort Lauderdale, for Stanley Moore, appellants.
Davis, Kirsch & Gorman, Fort Lauderdale, for appellee.
THOMAS, Justice.
Notices of appeal were filed by the appellants prior to 1 July 1957 and this court, pursuant to the provisions of Sec. 26(6), Article V of the Constitution, as amended in 1956, F.S.A., retained jurisdiction of the cause.
The litigation grew out of injuries received by the appellee when the "U-drive-it" car of appellant-Klem's Inc., driven by appellant-Stanley Moore, in which the appellee was riding as a guest of Moore, collided with two cars parked along the margin of Road A1A, known also as Atlantic Boulevard, in Fort Lauderdale. Although it was alleged in the complaint that the driver was drunk there is no need to trace the activities of himself and his guest during the afternoon, when they visited together several places where the one imbibed beer the other cocktails, because now each concedes that the other was not intoxicated, and the appellee testified that the driver was not so affected by the consumption of alcohol that he was incapable of properly operating the car.
The chapter about the association of driver and companion, pertinent to this controversy, seems to have begun about 8:30 in the evening when they left in the car to have dinner at a hotel on the beach. Soon after, according to appellee's version, the appellant-Moore began driving very fast, 40 to 50 miles an hour, and weaving his way into the parking area, between the roadway and the sand dunes on his right, and across the center line of the highway, to his left. The appellee said she remonstrated with him about his driving whereupon he increased the speed of the car. She then told him to slow down or else let her out. In response he laughed and said "Oh, hell, I can handle this car." Presently he drove against two of the parked cars, then travelled about 50 feet to a corner, turned left and went 400 feet down Windemar Street, where he stopped. Appellee's face was forced into the windshield by the impact and as a result was cut in several places.
When the element of drunkenness is eliminated two factors remain, the speed and the so-called weaving. This court held in Orme v. Burr, 157 Fla. 378, 25 So.2d 870, that speed alone was not enough to establish gross negligence, or willful and wanton misconduct. Of course, the speed could be considered as a circumstance which combined with the other might prove negligence of that degree. As we have stated, from the factual situation as the appellee described it, the impression is gained that the driver was operating "all over the place" first on the wrong side of the road, then in a parking area, meanwhile proceeding at breakneck speed.
A closer look at the evidence and the testimony depicting the locale at first seems to temper the degree of negligence  and, doubtless there was negligence on the part of the driver  to the extent of making it appear ordinary instead of gross. A photograph of the highway introduced on behalf of the appellee, shows that places are marked for the diagonal parking of cars with front wheels against the dune. But for these lines which are somewhat indistinct, the so-called parking area would appear to be only part of the surface of the highway. Furthermore, probably because of the varied shifting of the sand of the dune, cars standing in the area seem to form an irregular line so that some protrude much closer in the direction of the center line, or much farther from the margin, than others. This could logically account for a more or less uncertain path of a car proceeding past the standing cars and making its way among traffic.
*883 From the testimony it appears that Atlantic Boulevard has only two lanes, one for northbound, one for southbound, traffic. Each lane is 13 feet in width. From the eastern edge of the northbound lane to the sand is 20 feet. The lines marking the center of the road and the limits of the lanes were very ill-defined if, indeed, they had not been obliterated by the wear of traffic. We will advert to this condition later when we discuss the propriety of admitting in evidence a certain city ordinance.
It is clear from the testimony of a policeman who described the highway at that point and the picture of the highway placed in evidence by the appellee that the operator of a car proceeding northward had about 13 feet in which to maneuver if he kept the vehicle strictly in the space between the center of the road and the area on the east side of the highway where cars parked.
With this limited space in mind it first seemed to us a bit extravagant to describe the appellant-Moore's course as a weaving from a point on the wrong side of the road, and into a parking area on the other side of the road. Although the impression gained from this account that appellant-Moore was covering considerable territory as he swung from right to left may be a bit overdrawn, the very circumstances which give it this appearance militate against the position that he was exercising even slight care for the safety of his passenger. He was operating in very close quarters, and the nature of the locale required much more caution than he displayed.
Travelling at the speed the witness described, the appellant-Moore struck a Buick sedan which was parked alongside a Chevrolet sedan. He hit the Buick with such force that it was knocked up on the trunk of the Chevrolet. As a consequence there was extensive damage to the left, rear bumper and wheel and the entire left side of the Buick, and to the right, rear fender and trunk of the Chevrolet. The Chevrolet was "straightened around a little bit" by the impact.
The indifference of the appellant-Moore, indicated by the remark he made at the time the appellee protested against his way of driving, combined with the speed he had attained when he had so little room to maneuver, at a place within the city limits of Fort Lauderdale, on Highway A1A directly in front of a beach hotel, at 8:30 in the evening, presented a factual situation from which the jury could properly conclude that the driver was grossly negligent. Sec. 320.59, Florida Statutes 1955, and F.S.A.
The appellants maintain that reversible error was committed when the court admitted in evidence the mortality tables because there was insufficient proof of permanent injury to the appellee. We reject this contention. It was testified that the scars on her face could be reduced, although not obliterated, by plastic surgery or the "sandpaper" treatment, but disfigurement of her face was definitely shown and such damage is of lasting quality to any woman, especially one earning a living as a model and hostess. As one of the physicians put it: "Women feel differently about their scars than men do. You [the examining attorney] and I would probably let it ride because we are not very beautiful anyway, but women feel differently."
The appellants challenge the ruling of the judge that an ordinance of the city of Fort Lauderdale was admissible in evidence. It contained a provision that whenever a roadway had been divided into clearly marked lanes, a vehicle should be driven as nearly as practicable within a single lane and not be moved from the lane, unless that could be done with safety. The appellants contend that this ruling assumed that the lanes were clearly defined while the evidence, the picture to which we have referred, showed that the lines separating the lanes were indistinct.
Were we to decide the matter at this point we would be inclined to accept this view, but an examination of the charge on the subject given by the court to the *884 jury convinces us that any error that may have crept into the case by reason of the ruling was subsequently rendered harmless. The jury was told that if it was found that the ordinance had been violated, the infraction could be considered with other evidence in the case. Whether or not it was found that the ordinance had been violated depended on a determination whether or not the lines were "clearly marked." When the ordinance was offered the appellants made no objection on the specific ground now argued. Moreover they presented no exception to the charge relative to the ordinance.
The appellants complain about the failure of the court to read to the jury one of their charges with reference to the degree of contributory negligence which would bar recovery after giving one defining such negligence. In the rejected charge appeared the statement that appellee could not recover if she was shown to have been "guilty of any negligence whatever which may have contributed to her own damage, even in a slight degree, and regardless of how slight her negligence might have been * * *." (Italics supplied.) As we understand appellants' position, refusal of the charge constituted reversible error because the court by this action declined to define the degree of contributory negligence that would prevent recovery although the court had, by giving a charge, requested by the appellant-Moore, correctly defined contributory negligence. We do not attach sufficient importance to the argument to warrant upsetting the judgment, especially as the appellant-Moore used the adjective "slight" instead of the familiar one "appreciable". But we do not decide that use of the former would, of itself, make the charge, standing alone, improper inasmuch as counsel have cited in their briefs no decisions in support either of the charge or the judge's ruling.
Affirmed.
TERRELL, C.J., and ROBERTS, THORNAL and O'CONNELL, JJ., concur.