## No. 17,203.

### VICK *v.* ZUMWALT ET AL.
(273 P. [2d] 1010)

Decided September 7, 1954.   Rehearing denied September 27, 1954.

Messrs. CHILSON & McCREARY, for plaintiff in error.

Messrs. RIFFENBURGH & HARDEN, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

IN the trial court plaintiff in error M. M. Vick and his son, David Vick, were defendants, and defendants in error were plaintiffs. The essential facts are that M. M. Vick of Loveland, Colorado on February 16, 1952 was the owner of a Mercury automobile; that on said date his son, David, then almost fifteen years of age, while his parents were away from their home and in Fort Collins, Colorado, took the Mercury automobile from his father's garage and with the minor plaintiffs, Carol Zumwalt and Sam Rowley, as his guests, drove into the country. The occupants of the Vick car discovered that another high school student was following them in an automobile, whereupon David Vick increased the speed of the Mer-

cury car he was driving and, according to some of the testimony, played "ditch em" with the driver of the other car. In an attempt to outrun the other car and elude it, the respective cars passed a time or two, when the Mercury car, driven by David Vick, left the road and overturned in a ditch. Carol Zumwalt and Sam Rowley were injured and this action was instituted on their behalf, against David Vick and M. M. Vick, for resulting injuries and damages to David's guests on this occasion. The fathers of Carol Zumwalt and Sam Rowley joined claims against defendants for expenses incurred by them in having their children hospitalized and treated, and for other losses claimed by them.

Plaintiffs sought recovery against David based on his alleged "negligence consisting of a wilful and wanton disregard of the rights" of the injured guests, and sought recovery against M. M. Vick on the "family car doctrine." It is admitted that M. M. Vick did not know that his son was driving the car on February 16, 1952.

In the complaint it was alleged "That the said motor vehicle driven by the defendant David Vick was owned by his father, the defendant, M. M. Vick; that said motor vehicle had been purchased for family use; that the said motor vehicle at the time of the said negligence was being operated by the defendant David Vick solely for his own pleasure under the general permission of the defendant M. M. Vick, and that said defendant David Vick was a member of the household of the defendant M. M. Vick at the time of said negligence."

Defendants put in issue the material allegations of the complaint and set up as defenses the "guest statute" and contributory negligence on the part of Carol Zumwalt and Sam Rowley, and that the said plaintiffs voluntarily assumed the risks incident to the trip on which they went with David Vick, well knowing that he was an unlicensed, incompetent and inexperienced driver of a motor vehicle.

Trial was to a jury, which returned verdicts in favor

of plaintiffs and against David Vick and M. M. Vick. Following denial of motion for new trial and entry of judgment, defendant M. M. Vick brings the cause here by writ of error.

When the cause was submitted to the jury for determination of the issues, in addition to the usual forms of verdict, the following interrogatories were submitted to the jury:

"1. Was the accident proximately caused by negligence of defendant David Vick, as negligence is defined in the instructions of the court?

"2. Did the negligence, if any, of the defendant David Vick consist of a wilful and wanton disregard of the rights of the plaintiff Carol Zumwalt?

"3. Did the negligence, if any, of the defendant David Vick consist of a wilful and wanton disregard of the rights of the plaintiff, Sam Rowley?

"4. Was the defendant David Vick driving the automobile at the time of the accident with the consent of the defendant M. M. Vick?

"5. Was the plaintiff Sam Rowley, contributorily negligent as contributory negligence is defined in the instructions of this court?

"6. Was the plaintiff Carol Zumwalt contributorily negligent as contributory negligence is defined in the instructions of this court?"

Upon returning to the court its verdicts, the jury answered the interrogatories as follows: "1. Yes. 2. No. 3. No. 4. Implied consent Yes. 5. No. 6. No."

Before receiving the verdicts and the answers to the special interrogatories, the court returned the jury to the jury room "for further consideration of your verdicts and Answers to Special Interrogatories."

It appears that later, and after the dinner hour had passed, the jury again returned into open court where the court addressed it as follows: "Ladies and Gentlemen, there seems to be some inconsistency between your answers to the Interrogatories and your verdicts. I shall

therefore ask you to again return to your jury room and re-consider the instructions of the court and particularly Instruction No. 9." To this charge counsel for M. M. Vick objected.

Thereafter the jury returned into court with the identical verdicts, but changed its answers to interrogatories numbered 2 and 3, and substituted the word "Yes" in place of the word "No" in each instance. The other answers were the same as originally returned.

For reversal it is urged, (1) That the evidence was insufficient to sustain the verdict of the jury that the automobile was being operated by David with the consent of his father M. M. Vick; (2) that the trial court erred in giving instruction No. 14; (3) that the minor plaintiffs were guilty of contributory negligence "in riding with one whom they knew, or should have known by the exercise of ordinary care, was incompetent and unqualified to operate a motor vehicle; and also by remaining in the car without objections after the operator had committed acts of recklessness and negligence; (4) that the evidence is insufficient to sustain the finding of the jury that David was guilty of negligence consisting of a wilful and wanton disregard of the rights of the plaintiffs; (5) that the trial court erred in resubmitting the cause to the jury after it returned its first answers to the interrogatories with instructions to "consider particularly Instruction No. 9."

Subdivisions 3 and 4 of the asserted grounds for reversal are without merit. These matters were submitted to the jury and its findings returned under instructions not here challenged.

Subdivision 1 of the error asserted, is the very matter the jury was called upon to determine, and its finding would be binding were it not for error in Instruction No. 14, which reads as follows:

Instruction No. 14.

"You are instructed that if you find for the plaintiffs, or any of them, against the defendant David Vick, you

should then inquire as to the responsibility of the defendant M. M. Vick, for the negligence, if any, of his son David Vick.

"In this connection you are instructed as follows: If you find from a preponderance of the evidence that David Vick, on the occasion in question, was using the automobile with the consent, either express or implied, of his father M. M. Vick, then you shall find for such plaintiffs and against the defendants David Vick and M. M. Vick jointly.

"If you should find from a preponderance of the evidence that David Vick was using the automobile on the occasion in question, without the consent, either express or implied, of his father M. M. Vick, then your verdict should be for the defendant M. M. Vick and against the plaintiffs.

"Express consent, as used in this instruction, is a consent that is specifically stated.

"Implied consent, as used in this instruction, is a consent arising from facts and circumstances which would lead a reasonable person to believe that consent had been given.

"The word 'consent' as used in this instruction may be a general consent to use the automobile at any or all time, or may be a special consent to use the automobile on this particular occasion."

By Instruction No. 14 the jury was told that the liability of M. M. Vick could be based on the "negligence, if any" of his son David Vick. We direct attention to our holding in *Pettingell v. Moede*, 129 Colo. 484, 271 P. (2d) 1038, decided June 14, 1954. There, in an exhaustive opinion, Mr. Justice Clark has ably set forth the rules pertaining to the liability of a host for injuries sustained by a guest, and the term "wilful and wanton disregard" is defined. Plaintiffs in the trial court could not recover against David for simple negligence, and yet by Instruction No. 14 the jury was told that the liability of the

154

father could be predicated on "the negligence, if any," of David. This is error.

It will be observed that in this instruction the trial court referred to "express" consent, "implied" consent, "general" consent and "special" consent. The jury by its answers to interrogatory No. 4 concluded that the consent was "implied."

■ It is admitted by counsel for plaintiffs that mere ownership of the automobile is not sufficient to fix liability on M. M. Vick. They concede that M. M. Vick's liability must be predicated upon his consent, express or implied, that David, his minor son, might use the automobile involved.

■ Express permission or consent, is where one gives another leave to do a certain thing, as where a father expressly gives his son authority to use an automobile generally or at a particular time. Implied permission or consent, is where a person by his line of conduct has shown a disposition to permit another person to do a certain thing and raises no objection thereto. If the parent over a period of time permitted and allowed his son to use his automobile and made no complaint, that might constitute implied permission for him to use it, whether or not there was any express permission for its use on the particular occasion under examination.

■ To establish the elements required to bring into operation the family car doctrine, resort must be had to the circumstances, frequency and notoriety of operation of the automobile by a member, or members, of the owner's family. If evidence so introduced, though circumstantial, is adequate in scope, credibility, and significance, reasonably to establish the presence of these necessary elements, as against denials and explanations by or on behalf of the owner of the car, the requirements are satisfied, otherwise they are not.

To fix liability on the parent for an accident occuring when the car is operated by another member of the family, there must be consent, either express or implied,

on the part of the parent to the general use of the car, or an express consent to the use of the car on the particular occasion. The relation of parent and child standing alone does not establish consent. *Phillips v. Denver City Tramway Co.*, 53 Colo. 458, 128 Pac. 460.

The evidence discloses that M. M. Vick and his wife on occasions have allowed their son, David, to drive the Mercury automobile while accompanied by one or both of the parents. Both parents testified that their son, David, did not have permission to take or operate the automobile unaccompanied by one or both of the parents.

■ We need not detail the evidence concerning the times David allegedly took the Mercury car and drove it in and about Loveland, Colorado. As mentioned above, the parents testified that this use of the car by David was unknown to them and was unauthorized. It was for the jury to determine under proper instructions whether in face of the denials on the part of the parents, David did have general permission to use the Mercury automobile.

In *Hanford v. Goehry*, 24 Wash. (2d) 859, 167 P. (2d) 678, the Supreme Court of Washington held: "Proof that a car is a family car, under the doctrine as applied in this state, may be made in various ways, such as by showing the head of the family expressly stated that he had purchased it for the use of the family or household, or that, having a car, he has expressly consented to its use by members of his family or household. But proof of *continued* use by the members of his household is sufficient. When that is shown, his consent is implied." (Emphasis supplied)

In *Boltz v. Bonner*, 95 Colo. 350, 35 P. (2d) 1015, where the testimony showed without contradiction that the car was at the daughter's disposal whenever the latter's proposed use did not interfere with the mother's requirements, we held that the car was a family car within the principle announced in *Hutchins v. Haffner,*

156

63 Colo. 365, 167 Pac. 966, and *Boyd v. Close*, 82 Colo. 150, 257 Pac. 1079.

■ ■ Where there is a customary and continued use of the family car by a member of the household, the consent of the owner of the car may be either express or implied. Running through all the authorities where liability is fixed by reason of implied consent, we find references to customary or continued use of the vehicle. Implied authority is actual authority circumstantially proved, or evidenced by conduct, it is authority which the principal intended that the agent should have.

In the instant case, by Instruction No. 14, the jury was told that implied consent arises from facts and circumstances "which would lead a reasonable person to believe that consent had been given." The instruction continues that consent may be a general consent to use the automobile at any or all times, "or may be a special consent to use the automobile on this particular occasion." The jury, by its answer, said that consent was "implied," and we must assume they used the definition of implied consent submitted by the trial judge. Implied consent cannot be shown by some conjectural situation or conclusion of the jurors or assumptions indulged by them. It can only be shown by competent evidence, direct or circumstantial.

We conclude that the giving of Instruction No. 14 was error.

Instruction No. 9, given the jury, reads as follows:

"As to the issues of fact between the plaintiffs Carol Zumwalt and Sam Rowley and the defendant David Vick, you are instructed that to find for the plaintiff Carol Zumwalt, you must find by a preponderance of the evidence that:

"1. The plaintiff Carol Zumwalt has established by a preponderance of the evidence that the defendant, David Vick, was guilty of negligence which was a proximate cause of the injuries sustained by the plaintiff, and also that:

"2. The said negligence, if any, of the defendant David Vick consisted of a wilful and wanton disregard of the rights of the plaintiff Carol Zumwalt; and also that:

"3. The defendant David Vick has failed to establish a preponderance of the evidence that the plaintiff Carol Zumwalt was herself guilty of negligence which was a proximate cause of the injuries sustained by her."

Then followed identical language concerning the claim of plaintiff, Sam Rowley.

When the trial judge returned the jury to its room for a second further deliberation, he unquestionably noted the fact that the answer to the special interrogatory concerning David's "negligence" invalidated the verdicts awarding damages to plaintiffs. When we consider the fact that plaintiff in error was not a participant in this unfortunate event, and that his responsibility therefor, if any, is a vicarious liability, we must conclude that the emphasis on Instruction No. 9 constituted error.

It must be remembered that after the jurors had once been sent back for further deliberation (without comment on any particular instruction on the part of the trial judge) they came back into court without any alteration of their verdicts or answers to the interrogatories.

If the trial judge recognizes the necessity of further consideration by the jury of its verdict or answers to interrogatories and resubmits the case for further jury deliberation, this should be done by the judge without comment or emphasis on any single phase or instruction in the case. In the instant case shortly after the jury was told to consider "particularly instruction No. 9," it completely reversed its finding on the key fact in issue, which we believe is indicative of the prejudicial effect of the court's remark.

The judgment is reversed and the cause remanded to the trial court for a new trial in harmony herewith.

MR. CHIEF JUSTICE STONE and MR. JUSTICE MOORE concur in the result.