106 So.2d 110 (1958)
William Farley ANDREWS, Appellant,
v.
Ottie Wynell KIRK, Appellee.
No. 57-457.
District Court of Appeal of Florida. Third District.
October 30, 1958.
*111 Knight, Smith, Underwood & Peters, Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
The appellant, who was the defendant in the trial court, appeals from an adverse judgment for $14,750 based on a jury verdict.
The appellee, as plaintiff, sued the appellant to recover damages for personal injuries received while riding as a guest or passenger in an automobile owned and driven by defendant.
The case was pleaded and presented to the jury on gross negligence and also on simple negligence  the former to meet the requirements of § 320.59, Fla. Stat., F.S.A.,[1] *112 and the latter on the theory that plaintiff's guest passenger status was ended before the accident occurred.
The determinative question is the first point stated in appellant's brief, and that is whether a guest, in protest against improper driving, by demanding to be let out, can change the guest passenger status.
The evidence of the activities of the parties leading up to the accident was given by the three persons who were in the automobile. On the evening in question the defendant William Farley Andrews encountered the plaintiff Ottie Wynell Kirk, who called herself Nell Kirk, in a bar in Miami. The parties had met several times before, and Nell had gone fishing with Andrews on at least one other occasion. Andrews invited her to go with him to Key Largo that night, where he planned to go fishing early the next morning. She accepted, after her friend Ann Coppinger agreed to go along; and the girls intended to go swimming the next day. Andrews had had some drinks, but Nell Kirk said that he did not appear to her to be under the influence of liquor.[2] Shortly after the trip commenced, Andrews began to drive improperly.[3] Further along he drove at a high rate of speed which was observed to be as much as 85 miles per hour. The girls protested, and the plaintiff Nell Kirk coupled her protests with repeated demands on Andrews that she be let out of the car.[4] In his testimony *113 Andrews disputed that he drove as fast as stated by the plaintiff. He admitted that Ann Coppinger protested, but he denied that the plaintiff Nell Kirk asked him to slow down, or made any demand to be let out. Ann Coppinger testified that she recalled one protest to the driver, which she says was made by Nell Kirk at her request. She was unable to remember any other protests or any demands of Nell Kirk to be released. Shortly thereafter the defendant entered a curve at a speed too great to permit him to negotiate it,[5] and the car departed from the road and finally overturned with resulting injuries to the occupants.
Under the charges given at the trial the jury could have found that the plaintiff was a guest passenger, in which event plaintiff would be entitled to recover if the jury found her injuries were caused by gross negligence of the defendant; or the jury could have determined that plaintiff was not a guest passenger if they found that she had reasonably protested and demanded to be let out of the car, in which event she would be entitled to recover if the jury found the defendant guilty of simple negligence proximately causing her injuries. The court's charges made no provision whereby the jurors, if they should bring in a verdict for the plaintiff, could show whether the verdict was based on a finding of gross negligence or on a finding of simple negligence only, and the verdict for the plaintiff which resulted has left that question unanswered. As the jury may have based the verdict on the simple negligence alternative, the verdict cannot stand, because of the guest passenger statute, unless it is held that the trial court did not commit error in the charge to the jury, as above referred to, holding in effect that the guest passenger status could be changed by reasonable demands to be released, authorizing recovery in that event on simple negligence.
The question presented is one of first impression in this state, and the authorities on it elsewhere are not numerous. The question has been met head-on in only two other states  in Washington, where the change of status of a guest passenger was *114 disallowed, and in Georgia, where such change of status was recognized.
In Washington, where by statute guest passengers may recover only for injuries intentionally caused (with two exceptions not important here), RCW 46.08.080, it has been held that the guest passenger relationship cannot be terminated by protests against negligent and unlawful driving coupled with demands to be released. The one case in that state in which, in addition to a protest against improper driving, there was a demand to be let out of the automobile, was Akins v. Hemphill, 33 Wash.2d 735, 207 P.2d 195, 197. Other Washington cases which dealt with or discussed a question of change of status of guest passenger must be considered distinguishable, as not involving protest and demand to be released.[6]
In the Akins case a sixteen year old girl accepted an invitation to ride with the defendant. After the commencement of the journey she learned that he was under the influence of liquor and observed him driving carelessly. She became frightened and demanded to be let out. Her demands to be let out of the automobile were loud and repeated, and they were heard but were not heeded by the host-driver, who increased his speed, and while attempting to pass one truck collided with another, causing injuries to the girl. The Washington court affirmed an order sustaining a demurrer and dismissing her complaint which was based on negligence and not on intentional injury.
The court, dividing 6 to 3 in the Akins case, held that the earlier decision of the Washington court in Taylor v. Taug, 17 Wash.2d 533, 136 P.2d 176, had "committed" the court to a rule that "when she became a guest of the respondent driver, she became such for the entire journey and did not terminate the host-guest relationship by her demands."[7]
In certain other states where the question has arisen the courts avoided passing on the point directly by treating a refusal of a reasonable demand for release from the car as evidencing gross negligence on the part of a driver, thus furnishing a means of recovery on the basis of gross negligence under a guest statute, where the guest passenger was entitled to be released, but was not permitted by the driver to leave the car. See Berman v. Berman, 110 Conn. 169, 147 A. 568, and Manser v. Eder, 263 Mich. 107, 248 N.W. 563. Cf. Klem's Inc., v. Cline, Fla. 1958, 105 So.2d 881.
The case of Vance v. Grohe, 223 Iowa 1109, 274 N.W. 902, 903, 116 A.L.R. 332, was cited in the brief of appellant as holding that the guest status cannot be changed by a demand to be released, but the case does not sustain that proposition. There was in that case a demand to be released which the driver did not heed, but there was no reasonable basis for the demand, to make it rank as one entitling the party to be let out of the car to avoid injury. The guest passenger in the Vance case sought to get out for a reason of convenience rather than for safety. When the driver, after proceeding in one direction, turned back to get some other people, "some of the party, including the decedent, protested about going back; there was something said about there not being room in the car and some of them said they wanted to go home and they would get out and walk the remaining distance home." Disregarding those suggestions, the driver proceeded, and on the way back collided with a freight *115 train at a crossing. In that case the demand to be released, if it was a demand, was disassociated from improper driving or from any feeling of impending disaster.
In Georgia the question was raised squarely, and was decided to the contrary of the Washington holding.[8] In Blanchard v. Ogletree, 41 Ga. App. 4, 152 S.E. 116, 118, an action was brought following the death of a girl who was killed when an automobile in which she was riding as the invited guest of the defendant, and which the defendant was driving, was overturned. In that case, as in the present case, the action began as one based on gross negligence, and by an amendment it was alleged that the decedent had, prior to the accident, protested excessive speed and requested to be let out of the automobile; that the defendant had refused and disregarded her demand to be released, and had continued to drive at excessive speed, with the accident resulting.
In the Blanchard case, after citing decisions in that state which established the proposition that a guest passenger cannot recover from a driver for negligence unless the negligence amounts to gross negligence, the court said:
"The rule set forth in the foregoing division of the syllabus should not have application, however, where there was what amounted to a change in the legal relationship of the parties by reason of a request made by the passenger to be permitted to leave the car prior to the accident, and the continuance of the passenger in the car was occasioned by the refusal of the driver to accede to the request. In the instant case there was testimony of declarations made by the defendant shortly after the accident that, if he had permitted the deceased to get out of the car as she had requested, she would then be alive. This testimony may or may not have been fully explained by that of another witness to the effect that the statement had no reference to any protest made by the deceased on account of the defendant's manner of driving, but that the request to be permitted to leave the automobile and return home on the train was made when the defendant expressed a wish that the party have breakfast in the town to which they had driven, to which proposal the decedent demurred and then and there offered to return by train, whereupon the defendant acceded to the wishes of the decedent and turned the automobile towards home and was proceeding in that direction when the accident occurred. There was some evidence, however, from another witness, to the effect that the defendant stated to him that the decedent requested permission to leave the car after the car had been turned towards home. It therefore appears to be a disputed issue as to whether or not the decedent was being carried in the car at the time of the accident, contrary to her expressed wish and desire.
* * * * * *
"The evidence being in dispute relative to the status and relationship of the decedent at the time of the injury, the judge, on his own motion should have charged the jury the law relative to the degree of care chargeable to the defendant, in view of whichever status the jury might find that the decedent occupied at the time of the accident, and his failure to do so requires that the verdict and judgment be set aside. * * *"
Further, in its opinion on rehearing in the Blanchard case, the court dealt with this question as follows:
"* * * Whatever might be the rule respecting the right of a plaintiff to recover on account of negligence where the facts set up show willful and *116 wanton misconduct, especially where the amendment setting up such facts is allowed without objection (Charleston, etc., Ry. Co. v. Johnson, 1 Ga. App. 441, 442, 57 S.E. 1064), as we understand the petition, the suit by the mother for the homicide of the daughter is predicated upon the negligence of the defendant in his manner and method of driving the car, and no recovery is sought on account of the alleged wrong of the defendant in refusing to permit the decedent to leave the car when requested so to do. The allegation as to the defendant's refusal to permit her to leave the car was not set forth as a ground of negligence, but became relevant only by way of inducement, as throwing light upon the status and relationship existing between the parties at the time of the injury, which, in turn, fixed and determined the measure of care and diligence which was owing by the defendant to the decedent in driving the car. We can see no reason why the plaintiff could not take advantage of the changed relationship existing between the parties, which in turn augmented the degree of diligence owed to the decedent by the defendant, merely because such change of relationship may have been brought about by the wrongful, or even willful and wanton, conduct of the defendant.
"After all, the main and vital questions involved in this case were, first, whether, under the disputed issues of fact, the defendant owed the decedent, as his gratuitous guest, only slight diligence in her protection, or whether, under the facts, there had been such a change in relationship as rendered it incumbent upon him to exercise ordinary care in her behalf; second, whether or not, under the disputed issues of fact, the defendant, in his manner and method of driving the car, was guilty of a failure to exercise the degree of care which the facts as found by the jury might show he owed; third, whether or not the death of the decedent proximately resulted from the failure of the defendant to exercise such required degree of care."
The Blanchard case was followed by Anderson v. Williams, 95 Ga. App. 684, 98 S.E.2d 579, 581, wherein a passenger in a car sued the driver for injuries received which she alleged were attributable to the driver's negligence, both gross negligence and ordinary negligence. While the facts were not fully stated in the opinion, it is apparent that the court had before it allegations or facts such as would justify demand by the guest passenger to be let out of the car in order to avoid feared injury, and sufficient, when refused, to establish her changed status as an involuntary passenger to whom the driver owed a duty to exercise ordinary care. In this connection, the court in the Anderson case said:
"The plaintiff, although originally a guest to whom the driver owed only the duty of slight care, brought about what amounted to a change in the legal relationship of the parties by reason of her request to be permitted to leave the car and Anderson's refusal to allow her to do so, and thereafter, being a passenger therein against her will, the defendant Anderson owed her the duty to exercise ordinary care in her behalf. Blanchard v. Ogletree, 41 Ga. App. 4 (2), 152 S.E. 116; Fountain v. Tidwell, 92 Ga. App. 199 (4), 88 S.E.2d 486. * * *"
We do not find persuasive the holding of the Washington court that once the guest passenger voluntarily has begun a journey, the status of guest passenger cannot be changed or terminated under circumstances such as those presented in the present case, and we adopt the holding on that question of the Georgia cases cited above.[9]
*117 We do not mean by this to hold that the status of a guest passenger can be changed and terminated so as to avoid the provisions and effect of the guest passenger statute (§ 320.59, Fla. Stat., F.S.A.) by a protest alone against improper, negligent or unlawful conduct of the driver,[10] or upon a demand by the guest to be let out based on reasons of convenience and when there is no reason for the guest to fear bodily injury from improper driving.[11]
We do hold, however, that when one accepts an invitation to become a guest passenger in an automobile without advance knowledge of a condition or propensity of the host-driver tending to produce improper and dangerous driving, and when thereafter the driver's actions become such as to instill in the passenger a real and reasonable fear that an accident causing death or bodily injury may likely result, and when the guest passenger protests against such unlawful or negligent conduct of the driver and demands to be let out of the automobile, and the driver refuses such demand and fails to heed the protests to his conduct, the status of the guest is changed to that of being a passenger against his or her will and by duress, permitting such involuntary passenger to recover for resultant injuries on proof of either gross or simple negligence.
The case of Peery v. Mershon, 149 Fla. 351, 5 So.2d 694, quotes at length from 4 Blashfield's Cyclopedia of Automobile Law and Practice, perm. ed., §§ 2291 and 2292, where it is shown that the words "guest" and "passenger" as used in the statute, if not fully so, are synonymous to the extent that each implies a person riding by express invitation, or at least with the consent of the driver, and that the participation of the "guest" or "passenger" also is voluntary on the part of the latter, and not without consent or under duress.
The purpose of the Florida Guest Statute was stated in Koger v. Hollahan, 144 Fla. 779, 198 So. 685, 687, 131 A.L.R. 886, as follows:
"The sole purpose of the legislature in passing the act, as we construe the simple language which they used, was to prevent one who traveled with another in a car as a guest, or without compensation, from recovering unless it was proven that the driver of the car was guilty of the greater degree of negligence. Evidently, they were concerned with the propriety and fairness of the recovery by a free rider, whether invitee or `hitch hiker', for ordinary negligence of a driver and sought to confine the recovery of one who traveled without charge to damages caused by negligence that was gross or misconduct that was wanton. * * *"
Neither the wording of the guest statute, nor any policy which it serves, directs a conclusion that every invited rider must come within its terms and restrictions, or that all who enter an automobile with the consent of the driver must be construed to be guest passengers. This is demonstrated by the following examples:
A servant, such as a nursemaid, riding in an automobile and caring for the driver's children therein, is in the position of a guest passenger in the car, but she is held to not be a guest passenger within the meaning of the statute. Peery v. Mershon, supra, 149 Fla. 351, 5 So.2d 694; Knutson v. Lurie, 217 Iowa 192, 251 N.W. 147; and see Sullivan v. Stock, Fla.App. 1957, 98 So.2d 507; Miller v. Morse Auto Rentals, Inc., Fla.App. 1958, 106 So.2d 204.
*118 A prisoner who is being transported in an automobile under compulsion of the police, is not a guest passenger. Cf. Rhodes v. Jordan, La. App. 1934, 157 So. 811.
A kidnapped or abducted person who is driven in a car is an involuntary guest rider and is outside the statute. See Green v. Jones, Colo. 1958, 319 P.2d 1083, 1086, and Horst v. Holtzen, Iowa 1958, 90 N.W.2d 41, 46.
It has been held that a guest passenger whose proper demand to be released from an automobile is refused by the driver may have an action for false imprisonment, based on his status of being an involuntary passenger who remains in the car only under the duress of the driver. See Cieplinski v. Severn, 269 Mass. 261, 168 N.E. 722.
The trial judge having correctly charged the jury as to the basis on which they might return a verdict for the plaintiff if they should find from a preponderance of the evidence that plaintiff's injuries were the proximate result of defendant's gross negligence, or of defendant's simple negligence, depending on their resolution of the issue relating to termination of the guest passenger status, the verdict for the plaintiff in this case is entitled to be affirmed in spite of the fact that it does not show whether it was bottomed on a finding of gross negligence or of simple negligence.
The other questions presented on this appeal have been considered and are found to be without merit.
Accordingly, the judgment appealed from should be and hereby is
Affirmed.
HORTON and PEARSON, JJ., concur.
NOTES
[1] § 320.59, Fla. Stat., F.S.A., reads: "No person transported by the owner or operator of a motor vehicle as his guest or passenger, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such gross negligence or willful and wanton misconduct was the proximate cause of the injury, death or loss for which the action is brought; provided, that the question or issue of negligence, gross negligence, and willful or wanton misconduct, and the question of proximate cause, and the issue or question of assumed risk, shall in all such cases be solely for the jury; provided that nothing in this section shall apply to school children or other students being transported to or from schools or places of learning in this state."
[2] On this point plaintiff's testimony was:

"Q. Now, at this time when leaving Miami, what was Mr. Andrews' apparent condition to you; did he appear to be in control of his faculties, appear to be intoxicated? Please tell the jury how he appeared to you? A. No, sir, he appeared just like he was the first time I saw him. He was always nice, just as nice as he could be, in fact, laughing all the time, and there was nothing wrong with him.
"Q. He wasn't stumbling, staggering, or anything in any fashion indicating he wasn't all right? A. No, sir."
[3] Relating to this stage of the journey, the plaintiff testified as follows:

"Q. Now, up to the time you got to the fruit fly place, had Mr. Andrews acted all right? A. Well, he had been joking around, kidding all the way down before we got to this bar, before I dozed off and went to sleep. I will just tell you what he did. He was trying to shake me up, I thought, would let the car, you know, run around in the road like this (indicating), and said, `I am going to air this Chevrolet out tonight,' and laughing and talking. I said, `Don't you drive fast,' you know, and I was covered up in a towel. He had the windows open. Miss Coppinger, she was sitting beside me and him and her were talking, and I was stretched out in the middle like. * * *"
On cross-examination, referring to the same period:
"Q. Was there any more of this going off the side of the road other than what you talked about before he got to Homestead? A. I can't remember.
"Q. You don't recall anything else than other than his 85 miles an hour speed? A. There wasn't but one thing, when he stopped at the inspection place down there, he was driving fast and made a quick stop and jerked me and Ann both almost into the floorboard."
[4] Plaintiff's testimony relating to her protests and demands to be let out of the automobile are shown in the following testimony given by her:

"Q. After you left the fruit fly place, what remarks did you make to him? A. Well, he was driving awful fast and Ann first started me saying anything, when he first started driving fast she said, `Well, how fast are you going?' He said, `85.' I looked over at the speedometer, and I said, `You will have to slow down or let us out one.'
"Q. How many times, did you ask him that? A. I guess I asked him three or four times before we wrecked.
"Q. What was the speed of the car just before the accident? A. The last time I looked at the speedometer, we were making 85.
"Q. What happened to the car? A. It seemed to go off the righthand side of the road * * *."
And on cross-examination:
"Q. Yes, ma'am. Let me ask you this: How far is it from the fruit fly inspection to where the accident happened? A. How should I know? I have no way of knowing.
"Q. Was it one minute, two minutes, or three minutes? A. I can't remember.
"Q. Go ahead and tell us, please? A. Well, we passed this car, I mean the car passed us, and then we passed the car, and the car came back around us again. That is after I told him to slow down, he kind of slowed down, and then after the car passed us he started back driving fast again, and I asked him again to slow down. That is when Ann started crying and put her head over on my shoulder, on my right shoulder. I told him to just stop and let us out. That is when he laughed at us and said the mosquitoes would eat us up and we never would get a ride. I repeatedly asked him, and I was asking him even when we wrecked. When we started wrecking I asked him. We were going awfully fast."
[5] On this feature an investigating police officer said:

"A. Checking the physical evidence, sir, the car didn't make the curve at all, just ran  tried to straighten the curve out, ran along the right shoulder.
"Q. That is the right shoulder going south? A. Yes, sir; that would be the south lane.
"Q. All right. A. For 150 feet, and the car spun around and crossed over the road, black marks across the road for 87 feet.
"Q. Then what occurred? A. Making one and a half turns after it hit the shoulder on the northbound lane for another 75 feet, which makes a total of 312 feet.
"Q. Which side of the road did you find the car on? A. On the shoulder of the northbound lane.
"Q. Was it against anything? A. Yes, sir; it was laying against the pipe-line, not the pipe-line itself, it was against the brace which the pipe-line was sitting on."
[6] Taylor v. Taug, 17 Wash.2d 533, 136 P.2d 176, see Note 7, infra; Bateman v. Ursich, 36 Wash.2d 729, 220 P.2d 314, 18 A.L.R.2d 1440 (hitchhiker held to come within the guest statute; no protest or demand); Hayes v. Brower, 39 Wash.2d 372, 235 P.2d 482, 25 A.L.R. 2d 1431 (protests, but no demand to be let out).
[7] The Taylor case did not necessarily involve, or require decision of this question, because of the absence of proof of a demand to be let out and refusal of demand, and because the court there held that the plaintiff had assumed the risk and was guilty of contributory negligence.
[8] The State of Georgia had no guest passenger statute but limited a driver's liability to a guest passenger, by case law, to activities constituting gross negligence.
[9] The Washington holding, that once a guest always a guest under a guest passenger statute, has drawn law review criticism. See note, 63 Harv.L.Rev. 526 (1950); Fribourg, Guest-Host Relation Termination after Beginning of Journey, 5 Clev.-Mar.L.Rev. 101 (1956); Comment, 2 So.Dak.L.Rev. 98, 103 (1957).
[10] The cases are uniform in disallowing change of status of the guest by a protest, without demand to be let out. See Annotation, 25 A.L.R.2d 1448.
[11] Cf. Vance v. Grohe, supra, 223 Iowa 1109, 274 N.W. 902, 116 A.L.R. 332.