No. 18,937.

CONNIE LOU COFFMAN, MINOR, ETC. *v.*
GARY G. GODSOE, ET AL.
(351 P. [2d] 808)

Decided May 9, 1960.

Mr. DAYTON DENIOUS, Mr. OMER GRIFFIN, for plaintiffs in error.

Messrs. WORMWOOD, O'DELL & WOLVINGTON, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error Connie Lou Coffman was the plaintiff in an action commenced in the district court of the City and County of Denver in which she sought damages for personal injuries arising from an automobile collision, and will be referred to as plaintiff. Plaintiff was a passenger in a vehicle driven by Gary G. Godsoe, a minor of the age of 16 years. He will be referred to here as

Gary. This automobile, a 1936 Plymouth, was owned by Arthur Godsoe and Dorothy D. Godsoe, parents of Gary. Plaintiff and Gary were fellow students at South High School and were close friends. The evidence disclosed that prior to the accident Gary had spent a great deal of time at the Coffman home.

The injury complained of occurred on the evening of July 15, 1955, during the course of an automobile ride through Washington Park, the original purpose of which had been (declared by Gary) to go to a soft drink establishment and to return. The tour developed as an aimless one and the collision occurred after the original objective had been abandoned. Although Gary did not ordinarily drive a car due to the fact that he was not old enough, it was shown that on one previous occasion plaintiff's parents had allowed her to ride with him to Phipps Auditorium at City Park. Immediately prior to the injury in question there had been much discussion as to whether Gary had a driver's license. He had represented to plaintiff that he had had a good deal of experience driving a car in Wyoming and that he had obtained a Wyoming driver's license. He had expressed to plaintiff an intention to obtain a driver's license immediately upon reaching the age of 16 which would be on July 15, 1955. On this day, he represented that on the morning of July 15 he had gone to the licensing bureau and had obtained his driver's license. He further said that he had obtained his mother's permission to drive the car, and invited plaintiff and her friend, Carolyn Fells, to ride with him in the car. Plaintiff told him that she would have to get her mother's permission. She thereupon called her mother from the Fells' home. Mrs. Coffman, the mother of the plaintiff, gave a limited consent. She authorized plaintiff to ride to a neighborhood soda fountain called the White Spot and instructed her to return home immediately. According to the evidence, Mrs. Coffman specifically prohibited her riding around. It was upon this basis that plaintiff entered the vehicle.

Gary started out to the agreed destination, but did not go there. Instead he drove around the neighborhood and finally entered Washington Park. Before reaching the park he almost struck a parked car. This occurred when he took his hands off the wheel. While they were driving, there was conversation concerning the driver's license and he again assured plaintiff that he did have the license. Plaintiff at that time admonished him to be careful. He entered the park and while driving past the tennis courts took his eyes from the road, failed to make a turn, drove on the grass and struck a light pole head on. As a result of the resulting impact plaintiff suffered serious injuries, including the loss of an eye.

At the conclusion of the plaintiff's evidence, the trial court granted the defendant's motion for nonsuit. This decision was based on the ground that there was no evidence of willfulness, wantonness or intentional misconduct sufficient to make out a prima facie case, and that the Colorado Guest Statute applied and constituted a bar to recovery. In holding that the Guest Statute applied, the Court declared:

"I am staking my entire ruling on the basis that I think and feel that the Colorado Guest Statute bars recovery as a matter of law on the part of these plaintiffs. That was my reason for making the preliminary inquiry here this morning on this rather what to me is a novel and different theory and might conceivably have some merit, namely, that Connie was not a guest within the meaning of that statute by virtue of the admitted fact, as I understood the evidence, that the driving defendant, namely, Gary Godsoe, had deceitfully told both Connie and her mother that he had a license permitting him to lawfully drive when in truth and in fact he did not. The record contains the statement of counsel that apparently neither side has found any case, be it in this jurisdiction or elsewhere, ruling one way or the other on that issue, and if there be no legal authority for the affirmative of that proposition, namely, that the plaintiff

such as Connie comes out from under the Guest Statute, I am disinclined to be the first court in the land to say that. So, I am ruling that the Guest Statute does apply."

On the basis of our numerous prior decisions dealing with the difference between negligence and wanton conduct, the trial court concluded that the evidence was not sufficient to require submission of the case to the jury on the issue of whether the plaintiff could recover notwithstanding the guest statute applied.

In seeking reversal, plaintiff argues, *first,* that she was not a guest in the Godsoe automobile and that the guest statute has no application in the case; *second,* that assuming the application of the guest statute, nevertheless the question was one for the jury in that the evidence established defendant's guilt of wanton conduct.

Her *third* contention is that if the Colorado Guest Statute is held to apply in the case that its application would constitute a violation of plaintiff's constitutional rights.

## I.

*The question whether plaintiff was in the legal status of guest within the meaning of the applicable statute, C.R.S. '53, 13-9-1.*

The so-called guest statute provides that a person who is being transported in a motor vehicle as the guest of the owner or operator shall not have a cause of action unless her injuries were caused by intentional misconduct, intoxication or by negligence consisting of wilful and wanton disregard for the rights of others.

Plaintiff's contention is that the statute is inapplicable unless it appears that the person was a guest in fact and in law, and that the evidence in the instant case fails to establish guest status. She claims that she was riding in the car under a misapprehension arising from defendant's misrepresentations that he was an experienced driver; that he had a driver's license and that he had obtained express permission to drive on the occasion in question.

■ We have held that the guest statute is in derogation of the common law and that it must be strictly construed. *Green v. Jones,* 136 Colo. 512, 319 P. (2d) 1083. There it was said:

"This statute is in derogation of the common law rule which makes the operator answerable in damages for injuries suffered by an occupant of his car arising out of and proximately caused by the operator's failure to exercise ordinary care. Such being the case, the statute must be strictly construed."

Recovery for injuries caused by simple negligence is denied a guest because of his non-paying status. It is said that he is the recipient of a gratuitous benefit conferred on him by the owner or operator of the vehicle. By reason of this the statute requires the guest to accept the hazards created by the ordinary negligence of the host. By agreeing to accept the free transportation, he is held to waive his right to recover for injuries occasioned by the simple negligence of the driver. This is expressed in *Millington v. Hiedloff,* 96 Colo. 581, 45 P. (2d) 937, wherein it was stated:

" * * * The guest, under the statute, must take the risk of the driver's simple negligence. She cannot recover on a showing of negligence alone. She does not carry the risk of willful and wanton acts or omissions that proximately cause her injury."

It is amplified somewhat in *Green v. Jones,* supra:

"To achieve the status of 'guest' there must be an invitation, expressed or implied, and an acceptance, formal, informal, or by act or deed. Kathy, because of her tender years, was incapable of accepting; the defendant recognized this fact and, without consulting Kathy, picked her up and plunked her down in the front seat. A strange invitation. How did Kathy accept?

\* \* \*

"Interwoven in our guest statute and decisions construing the same we find the doctrines of 'assumption of risk,' 'contributory negligence,' 'failure to extricate

oneself from apparent danger,' etc., none of which can with reason be applied to Kathy."

Also relevant are the following decisions, all of which are discussed in *Green v. Jones,* supra; *Dobbs v. Sugioka,* 117 Colo. 218, 185 P. (2d) 784; *Wilson v. Hill,* 103 Colo. 409, 86 P. (2d) 1084; *United Brotherhood of Carpenters, Local 55 v. Salter,* 114 Colo. 513, 167P. (2d) 954; *Ling v. Pease,* 128 Colo. 518, 232 P. (2d) 189; *Murrow v. Whiteley,* 125 Colo. 392, 244 P. (2d) 657. See also *Haller v. Gross,* 135 Colo. 218, 309 P. (2d) 598, also cited and quoted with approval in the *Green* case.

■ These decisions recognize, implicitly at least, the principle that the relationship of driver and guest is consensual in its nature and involves conscious acceptance by the guest of the status or relationship with its attendant hazards. See also 4 *Cyclopedia of Automobile Law and Practice* §2292, pp. 306-326.

It follows that one does not stand in the guest relationship where the circumstances of passenger relationship arises involuntarily or forcibly. *Green v. Jones,* supra, wherein the Court observed:

"* * * Certainly a kidnapped person does not attain the status of guest; a prisoner being transported against his will is not a guest."

Our own precedents, therefore, reveal the existence of the following principles:

First, that the guest statute creates a special status and special rights and obligations;

Second, that the guest status contemplates that the guest accepted the relationship with its attendant hazards;

Third, that force or lack of capacity nullify the acceptance which is essential to the host-guest relationship.

The remaining question is whether misrepresentations which operate as an inducement to one to become a passenger, produces a like legal effect as that which follows from the exercise of force or the existence of incapacity. Although we have found no precise precedent, there are

numerous familiar analogies. The clearest of these is, of course, the contract where misrepresentations operate to render voidable the promise of the victim. The field of intentional torts. furnishes even clearer analogies. Thus the privilege or defense of consent applicable to intentional torts becomes inoperative if the assent is obtained by fraud. 1 *Harper and James, The Law of Torts,* 234, §3.10 and the cases there collected. See also *Prosser, Law of Torts* 85 where the author comments on assault and battery and false imprisonment cases wherein fraud and duress have rendered the privilege of consent inoperative. See also the *Restatement of Torts,* §§56, 57 and 58. Section 56, which deals with consent as applied to false imprisonment, declares that submission to legal authority under a mistaken belief as to its validity is not valid consent. Section 57, comment b, declares:

"* * * Therefore, while the fraudulently procured assent protects the actor from liability predicated upon the mere fact that the contact has been inflicted, he is still subject to liability for any bodily harm which results from the contact to which he has fraudulently induced the actor to submit, not because of any lack of consent to the contact, but because of the fraudulent, and therefore tortious, means by which the assent has been procured, with knowledge that the contact will or may prove harmful."

See also *DeMay v. Roberts,* 46 Mich. 160, 9 N.W. 146; *Commonwealth v. Stratton,* 114 Mass. 303, 19 Am. Rep. 350; *Commonwealth v. Gregory,* 132 Pa. Super. 507, 1 A. (2d) 501; *Crowell v. Crowell,* 180 N.C. 516, 105 S.E. 206; *Bartell v. State,* 106 Wis. 342, 82 N.W. 142.

The marriage status is voidable upon a showing that it was induced by false material representations.

Since the law recognizes that consent obtained by material fraud is not a valid consent, and since the guest relationship is consensual, it follows that where the transportation is the result of fraud on the part of the driver or operator as to his authority to drive a motor vehicle, the consent or acceptance so obtained is

void and the passenger cannot be held to have waived his or her right to recover for injuries occasioned by the ordinary negligence of the driver. So also where the transportation results from fraud on the part of the driver or operator as to his ability to drive a vehicle, the consent or acceptance is thereby void and the passenger cannot be held to have waived his or her right to bring an action for injuries occasioned by the ordinary negligence of the driver.

In the case at bar, it appears beyond dispute that Gary made false and fraudulent statements for the purpose of persuading plaintiff to enter the car. Moreover, there is substantial evidence to establish that the representations were material — that plaintiff would not have accepted the guest status had it not been for these statements. Involuntary acceptance of transportation operates to avoid the element of consent which is essential to existence of the guest status.

■ The trial court was not called upon to decide whether the issue of inducement of plaintiff to become a passenger was established beyond dispute. Nevertheless, the circumstances establish *prima facie* the materiality of the misrepresentations that she would not have entered the car had she known the true facts. We note, however, that the defendant's motion for nonsuit was granted at conclusion of the plaintiff's testimony and consequently the defendant did not have an opportunity to offer evidence on this question. Therefore, whether this question is one of law or fact must remain open and the trial court will have to finally determine it in the light of the evidence presented at the trial. Whether the guest-driver relationship has been established may be held a question of law or fact depending upon the circumstances. See 4 *Cyclopedia of Automobile Law and Practice* 326, §2292 and see the cases collected in footnotes 21 and 21.5 thereof.

In view of our conclusion that the question whether plaintiff was a guest may have to be submitted to the jury, it becomes necessary to consider the contention

of plaintiff that even though the guest statute is applicable, nevertheless, the defendant was guilty of negligence consisting of wanton and reckless disregard for the rights and safety of the plaintiff.

## II.

*The question whether there was sufficient evidence of negligence consisting of a willful and wanton disregard of the rights of others to warrant submission of the case to the jury if the guest statute applies.*

In support of her contention that the conduct of the defendant was wanton, plaintiff relies on the evidence that shortly prior to the collision defendant on two separate occasions removed his hands from the wheel; that immediately prior to the impact he diverted his attention from his driving to look at the adjacent tennis courts. They also call attention to the fact that defendant told plaintiff to "shut up" after the accident when she cried out.

Although the evidence establishes indisputably that the defendant was guilty of negligence which was the proximate cause of the injury, and even though the defendant's negligence is palpable and perhaps aggravated, we are constrained nevertheless to hold after careful analysis that the evidence is insufficient to constitute wanton conduct.

The distinction between negligence and "willful and wanton disregard" has been considered frequently by this Court. Although the exact fact situation has not been presented previously, our prior decisions furnish guides to solution of the present problem.

In *Millingston v. Hiedloff,* supra, the driving was at an excessive speed considering the conditions. The driver continued this conduct notwithstanding the protests of the plaintiff guest, and the vehicle turned over. It was held that the conduct was not wanton.

In *Pupke v. Pupke,* 102 Colo. 337, 79 P. (2d) 290, the conduct was ruled negligent and not wanton. Here the driver allowed the car to edge too close to the side of a

mountain road as a result of which the road gave way and the vehicle turned over into the canon. See also *Bashor v. Bashor,* 103 Colo. 232, 85 P. (2d) 732, where it was held that inattention was not wanton. Here the driver was manipulating a radio and was not watching the road. The conduct in *Eberle v. Hungerford,* 130 Colo. 167, 274 P. (2d) 93, is comparable to that in the present case. There the inattention of the driver resulted in his failure to see a red traffic light and struck a vehicle which was then crossing the intersection. It appeared that, just prior to the accident, the driver had placed his arm around a girl companion. The holding was that this constituted simple negligence.

In *Pettingell v. Moede,* 129 Colo. 484, 271 P. (2d) 1038, the Court defined wanton conduct as follows:

"One may be said to be guilty of 'willful and wanton disregard' when he is conscious of his misconduct, and although having no intent to injure anyone, from his knowledge of surrounding circumstances and existing conditions is aware that his conduct in the natural sequence of events will probably result in injury to his guest, and is unconcerned over the possibility of such result. * * * "

A full and accurate discussion of the distinction between the two types of conduct is found in *Fanstiel v. Wright,* 122 Colo. 451, 222 P. (2d) 1001, (an exemplary damage case). Here the Court speaking through Mr. Justice Stone explained that negligence "in its generally accepted meaning, is the negative of attention * * * but that

" * * * Negligence consisting of a reckless disregard of the rights or safety of others, as required by the statute, involves more than that. To be so classified, conduct must negative both attention and concern; it must demonstrate indifference as well as inattention to consequences which may result. *Millington v. Hiedloff,* 96 Colo. 581, 45 P. (2d) 937. 'Reckless,' as the word is used in the statute, is equivalent to 'wanton.'

"The requirements of the statute, we think, are well stated in Restatement of the Law — Torts, page 1293, chapter 19, section 500: 'The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' This definition has been approved in numerous jurisdictions."

Section 500 *A.L.I. Restatement of Torts,* cited with approval in the *Fanstiel* case, supra, distinguishes between inattention and wantonness and points out that:

"Conduct cannot be in reckless disregard of the safety of others unless the act or breach of duty is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others. It is reckless for a driver of an automobile intentionally to cross a through highway in defiance of a stop sign if a stream of vehicles is seen to be closely approaching in both directions, but if his failure to stop is due to the fact that he has permitted his attention to be diverted so that he does not know that he is approaching the crossing, he may be merely negligent and not reckless. So too, if his failure to stop is due to the fact that his brakes fail to act, he may be negligent if the bad condition of the brakes could have been discovered by such an inspection as it is his duty to make, but his conduct is not reckless."

The authors note that reckless disregard of the safety of others is used in the same sense as "wanton or wilful misconduct" which appears in statutes and decisions.

Parts f and g of Section 500 of the *Restatement,* supra, are also enlightening in that they contrast intentional

misconduct, recklessness and negligence. This discussion follows:

"f. *Intentional misconduct and recklessness contrasted.* Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

"g. *Negligence and recklessness contrasted.* Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency in that reckless misconduct requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. If differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."

See also *Holmes, Privilege, Malice and Intent,* 8 Harv. L. Rev. 1.

██ Thus the controlling factor in distinguishing intentional conduct from reckless or wanton conduct is the degree of certainty or probability that the harm will result. If the threat of harm exists to the extent of "strong probability," the conduct is reckless or wanton. If, on the other hand, the conduct threatens the result to the degree of "substantial certainty," it is regarded as intentional.

The difference between the described types of conduct and ordinary negligence is apparent. In the latter the threatened result is not a strong probability. Nor does it involve "a conscious choice of a course of action either with knowledge of the serious danger * * * or with knowledge of facts which would disclose this danger * * * ."

The conduct of the defendant in the case at bar is clearly and indisputably negligent. It shows inattention and inadvertence. It falls short of wantonness in that it failed to disclose a conscious choice of an act which created such a high degree of danger that the result was a strong probability. It is impossible to infer that the defendant's act of taking his eyes from the road was a conscious act, and it is not possible to infer that the risk of head-on collision was present to the degree of "strong probability." It follows that it was not error to refuse to submit to the jury the issue whether the defendant's conduct was wanton and reckless.

### III.

*The question of constitutionality of the Guest Statute.*

The contention that C.R.S. 13-9-1 is unconstitutional has been determined adversely to the view urged by the plaintiff in *Vogts v. Guerretta,* No. 18,834, decided May 2, 1960.

### IV.

*The defendants' contention that the evidence fails to establish that the defendant Gary was driving the auto-*

*mobile with the consent, express or implied, of his parents.*

Although the evidence discloses that the defendant Gary did not have the express authorization of his parents to drive the vehicle, there is substantial evidence to suport a conclusion that he had implied authorization. It was shown that he had driven the car on prior occasions, that he was driving it on the occasion in question; that it was a car which was used generally by the family, and that the key was kept in it inside the garage. Thus, the evidence on this issue was sufficient. *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079; *Boltz v. Bonner,* 95 Colo. 350, 35 P. (2d) 1015; *Vick v. Zumwalt,* 130 Colo. 148, 273 P. (2d) 1010.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

MR. JUSTICE HALL and MR. JUSTICE FRANTZ specially concur, MR. JUSTICE KNAUSS dissents. MR. JUSTICE MOORE concurs in the result.

MR. JUSTICE HALL specially concurring.

I agree with the holding of the majority that the judgment should be reversed; however, I am of the opinion that the guest statute is unconstitutional. The record discloses evidence of defendant's negligence; therefore the matter should have been submitted to the jury on the facts presented and without regard to the requirements of the guest statute.

MR. JUSTICE FRANTZ joins in this specially concurring opinion.

MR. JUSTICE KNAUSS dissenting:

I respectfully dissent. Certainly I am not unmindful of the tragic consequences resulting to plaintiff from the unfortunate accident detailed in the record. Never-

theless I must dissent, for it is not every untoward result of an accident which gives rise to a claim sustainable in a judicial proceeding. Too often of late, actions have been determined by the tragic results suffered by a claimant rather than by the settled law applicable to the particular case.

The majority opinion states that "one does not stand in the guest relationship where the circumstances of passenger relationship arises involuntarily or forcibly. * * * So also where the transportation results from fraud on the part of the driver or operator, the consent or acceptance is thereby void and the passenger cannot be held to have waived his or her rights to bring an action for injuries occasioned by the ordinary negligence of the driver."

The record in the instant case is devoid of any evidence indicating that the plaintiff "involuntarily or forcibly" entered defendant's car. On the contrary, the testimony indicates that plaintiff was not only a willing but an anxious guest.

In the majority opinion it is admitted that defendant was guilty of nothing more than simple negligence in momentarily taking his eyes from the road while passing the tennis courts, and that such negligence does not give rise to an enforceable claim against defendant for the damages ensuing under the guest statute. It is then argued that plaintiff was not a guest because defendant falsely represented that he had a driver's license. It is manifest from the record that the only person deceived by this statement was plaintiff's mother, who had no direct communication with defendant, and that plaintiff was a willing if not an anxious guest in defendant's automobile. At no time did plaintiff by word or act seek to terminate the guest relationship voluntarily entered into by her. She was not a babe in arms unable to determine her own course of action. She was a high school girl possessed of at least average intelligence and the capacity to know and understand what she was

doing. The tragic results might well have ensued had defendant possessed a driver's license, and lack thereof did not directly or indirectly contribute to the accident. Plaintiff had previously been a guest in defendant's automobile and did nothing on the day of the accident to indicate that upon abandonment of the original destination she was reluctant to proceed on the trip through Washington Park. She was in no sense an unwilling passenger, and certainly she was not a "captive" in defendant's conveyance, nor was she forcibly abducted.

The only definition of a guest in this state is found in C.R.S. '53, 13-9-1, and no exceptions are provided to the rule there announced. Whether the guest statute was applicable in the instant case was a question of law for the trial court and not one for determination by the jury. This is the universal holding of the courts. Some courts have held that "once a guest always a guest," a doctrine with which I cannot agree. It is my considered opinion that an existing relationship of host and guest may be changed by protest and demand to be let out of the automobile. See *Andrews v. Kirk,* (Fla.) (1958) 106 So. (2d) 110, and *Blanchard v. Ogletree,* 41 Ga. App. 4, 152 S.E. 116. I quote from the headnote in *Andrews v. Kirk,* supra:

"Where one accepts invitation to become guest passenger in automobile without advance knowledge of any condition or propensity of driver tending to produce improper and incompetent driving, and when driver's actions thereafter become such as to instill in passenger real and reasonable fear of accident causing death or bodily injury, passenger protests against such unlawful or negligent conduct of driver and demands to be let out of automobile, but driver refuses such demand and fails to heed protests, status of guest is changed to that of involuntary passenger, for whose injury driver may be held liable upon proof of either gross or simple negligence."

The case of *Ortman v. Smith,* 198 F. (2d) 123

(C.A.S.D. 1952) involved facts very similar to those of the instant case. There, the driver, Judith, was twelve years and 8 months of age, and the facts set forth in the opinion are as follows:

" * * * Plaintiff's deceased daughter, Donna Jean Ortman, was 13 years old at the time and was a friend of Judith.

"On the day in question Judith came to the Ortman home and requested Donna Jean's parents to permit Donna Jean to accompany Judith in a ride in the Smith automobile. Judith had the car alone at the time, and Donna Jean's parents knew it and also knew Judith's age. At first, plaintiff refused to let his daughter accompany Judith, but he finally relented and gave Donna Jean permission to go with Judith as long as they did not go outside of the town of Canistota. The two girls made a short trip within the town with Donna Jean's infant sister, then they returned to the Ortman home and leaving the sister there, started on another ride, this time with the consent of Donna Jean's mother only and again with the admonition not to go outside of town.

"By the time she returned to the Ortman home to leave the baby sister, Judith had picked up four other young girls, all of them friends of both Donna Jean and Judith. The six girls proceeded to a place called 'Stanley Corners,' about six miles east of the town of Bridgewater."

The court goes on to describe the trip to Bridgewater, the children's decision to go on to a farm near that town, and the subsequent accident wherein the automobile overturned and Donna Jean was killed. The court then applied those facts to the South Dakota guest statute which is substantially similar to our own and held that Donna Jean was a guest in the automobile, stating:

"As to the defendant Judith Smith, it was evident that the deceased Donna Jean Ortman was her guest within the express terms of the South Dakota Statute.

She was being 'transported by the * * * operator of a motor vehicle as (her) guest without compensation for such transportation' and the Statute specifically denies a cause of action for damages against such operator for death 'unless such accident shall have been caused by the willful and wanton misconduct of the * * * operator of such motor vehicle.' It is also clear that the entire trip was of social character and that the passengers were there 'through the promptings of friendship' and there was nothing to suggest that it 'was motivated by a mutual expectation of substantial benefit to the owner or operator.' (Citations.) That a minor may be a 'guest' within the meaning of the term in so-called 'guest statutes' seems clear. (Citations.)"

The court there affirmed the action of the trial court in directing a verdict for defendants.

I quote from the concurring opinion in *Akins v. Hemphill*, 33 Wash. (2d) 735, 207 P. (2d) 195:

" * * * the fact of rampant collusion induced the legislature to say that, as a matter of public policy, the stopping of collusive suits in host-guest cases is more important than maintaining the presumption that all witnesses tell the truth, the whole truth, and nothing but the truth. The legislature in effect said that it is better that there be an occasional injustice than a wholesale perversion of justice. To announce any other rule than that adhered to by the majority would again make a jury question out of any host-guest case in which the plaintiff would testify, truly or falsely that he had attempted to terminate the host-guest relationship prior to the accident."

Under the majority opinion the question of driver-guest relationship is reduced to one of fact for the jury rather than a question of law for the court, as has always been the rule. As a result I envision a host of actions by persons, who under the statute are unquestionably guests who will attempt to persuade juries and the courts that they were induced to enter the vehicle by the false

representations of the host that he was a competent driver, and but for a belief in such representations would not have entered the automobile or accepted the ride.

This is so far from my concept of the proper application of the guest statute that I must dissent.